## Commonwealth *v.* Haugh, Appellant.

Argued June 13, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and CERCONE, JJ. (SPAULDING, J., absent).

*Harry E. Sprogell,* for appellant.

*Charles C. Brown, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 11, 1969:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was convicted for violation of the Act of June 24, 1939, P. L. 872, as amended, 18 P.S. §4211, which provides: "Whoever, in any manner, for exhibition or display, places or causes to be placed any word, . . . upon any flag, . . . of the United States . . .; or exposes or causes to be exposed to public view any such flag, . . . or publicly or privately mutilates, defaces, defiles or tramples upon, or casts contempt either by words or act upon, any such flag, standard, color or ensign, is guilty of a misdemeanor. . . .

This section does not . . . apply to any patriotic or political demonstration or decorations."

More specifically, appellant was charged with having ". . . exposed to public view the flag of The United States of America upon which was printed, 'Make Love Not War' and 'The New American Revolutionaries.'" This act was part of a demonstration conducted at an annual July Fourth parade in State College, Pennsylvania by several young people to protest United States involvement in the Vietnam War. All the participants in this demonstration were arrested. Appellant was tried before a judge sitting without a jury. He was found guilty and this appeal followed.

Appellant argues that the statute is unconstitutional because it violates the First Amendment guaran-

tee of free speech. I would not reach that issue in this appeal, however, because the case should, in my opinion, be resolved on two other grounds advanced by appellant. They are: (1) that appellant was denied his right to counsel at trial. This argument is based on the court's failure to appoint counsel for him and its refusal to grant a continuance so that he might attempt to employ private counsel. (2) that the exception in the Act which provides that "This section does not apply to . . . patriotic or political demonstrations," exempts appellant from prosecution.

I will discuss each contention separately.

# I

Rule 318 of the Pennsylvania Rules of Criminal Procedure, which was in effect at the time of trial provides ". . . (b) In Noncapital Cases. (1) When a defendant, charged with an indictable offense, files a sworn application for the assignment of counsel in compliance with the form in Rule 318 A stating that he is without financial resources or otherwise unable to employ counsel, the court shall upon cause shown assign counsel to represent him in his trial. . . . (3) The court, of its own motion, shall assign counsel to represent a defendant whenever the interests of justice require it."

It is undisputed that appellant, at the time of his arraignment, was earning approximately $40 per week and that his total income for the preceding twelve months was $90. He applied on a standard form provided by the court for assignment of counsel, pursuant to Pa. R. Crim. P. 318. In this application, he stated that he had no funds of any kind, and that he was unable to obtain funds in order to pay for an attorney.

This petition was denied by the lower court judge, who stated "for the record" that he would not appoint

counsel for appellant because appellant "was self-employed and it was the opinion of the court that he had sufficient funds to employ his own counsel and that the only time the court appoints counsel is for poor and indigent people who are without funds." Appellant then requested a continuance so that he could attempt to obtain counsel. This request was denied. The trial commenced and appellant proceeded without the aid of counsel.

The finding by the trial court that appellant had "sufficient funds to employ his own counsel" was made exclusively on the basis of the information contained in appellant's petition sur Rule 318. No other evidence relating to appellant's financial condition was presented to the court, nor was any requested.

In this light, the trial court's finding that appellant could afford an attorney had no basis in fact and cannot be upheld.

Rule 318, on its face, does not spell out exact criteria for determining when an accused is: (1) ". . . without financial resources *or otherwise unable to employ counsel. . .*", or (2) *when "the interests of justice require" appointment of counsel be made.* (Emphasis added)

Moreover, no state or federal guidelines appear which delineate the income level below which free counsel must be appointed in this case. However, one suggested standard which might cover most situations is that a person who is "without financial resources" for purposes of Rule 318 is "one who has insufficient funds [not necessarily being *devoid* of funds] to pay an attorney for the services his particular case requires." Note, 76 Harv. L. Rev. 579, 585 (1963).[1]

---

[1] Another plausible suggestion is to refer the borderline cases (i.e., partial indigents) to a panel of capable attorneys willing to handle criminal cases for a modest fee. Trebach, A Modern De-

The American Bar Association Project on Minimum Standards for Criminal Justice, *Providing Defense Services*, (tentative draft 1967) proposes the following standards: "6.1 Eligibility. Counsel should be provided to any person who is financially unable to obtain adequate representation *without substantial hardship* to himself or his family . . . Commentary. . . . the federal Criminal Justice Act of 1964 makes its benefits applicable to those 'financially unable to obtain an adequate defense.' 18 U.S.C. §3006 A (a). 'The term "indigency" is avoided because of its implication that only an accused who is destitute may need appointed counsel or services.' . . . The last phrase of the standard here proposed, 'without substantial hardship to himself or his family,' is included to emphasize that *eligibility is not to be determined on the supposition that one is entitled to be provided counsel only after he has exhausted every financial resource that might be required for other vital personal or family necessities,* such as food, shelter, or medicine. At the point at which payment of a fee to retain counsel would inflict substantial hardship on the family unit, or on himself, if he has no family, society's obligation to provide counsel arises . . . 6.2 Partial Eligibility. The ability to pay part of the cost of adequate representation should not preclude eligibility . . ." (Emphasis added.)

Agreeing with the tenor of the above standards, the Uniform Law Commissioners' Model Defense of Needy Persons Act states unequivocally that: ". . . A needy person who . . . is being detained by a law enforcement officer, or who is being detained under a conviction of,

fender System for New Jersey, 12 Rutgers L. Rev. 289, 325-26 (1957). Such proposals would more effectively cover the case of the partial indigent. Thus, a defendant who has some, but not enough funds, might bear a proportionate part of the cost of his defense.

a serious crime, is entitled: (1) to be represented by an attorney to the same extent as a person having his own counsel is so entitled; . . . The attorney, services and facilities, and court costs shall be provided at public expense to the extent that the person, at the time the court determines need, is unable to provide for their payment *without undue hardship*." (Emphasis added.)

Furthermore, "needy person" is defined in this Act as one "who at the time his need is determined is unable, *without undue hardship,* to provide for the *full payment* of an attorney and *all* other necessary expenses of representation;" and "serious crime" is defined as including "a misdemeanor or offense any penalty for which includes the possibility of confinement [for six months or more] or a fine of [$500] or more . . ." (Emphasis added)

The appellant in the instant case had no savings, earned $40 per week, had earned only $90 in the preceding twelve months, and was without other means of support. Thus, under any of the various formulations stated above, he was entitled to the appointment of free counsel pursuant to Rule 318. To use the very language of the Rule, "the interests of justice" mandate this result.

## II

The second point under consideration is whether the statute's exception which provides that "This section does not apply . . . to any political demonstration or decorations" exempts appellant from prosecution. The lower court refused to find such exemption because although ". . . we believe that [appellant and the other demonstrators] were conducting a protest on a political issue," the word "political" pertains only "to the exercise of the functions vested in those charged

with the conduct of government and relates to the management of governmental affairs."

I believe that the court erred in this regard.

The law is well-established by statute in this Commonwealth that penal provisions are to be strictly construed. Statutory Construction Act §58, 46 P.S. 558(1). As our courts have stated "it is not the construction which is supported by the greater reason that is to prevail, but that one which if reasonable operates in favor of life and liberty." *Commonwealth v. Glover,* 397 Pa. 543, 156 A. 2d 114 (1959). In my opinion, the construction adopted by the lower court is neither reasonable nor consonant with our judicial regard for construction favoring the life and liberty of the accused.

The difficulty with the lower court's definition is that, if accepted, it would impose a lesser standard of respect for the flag upon governmental employees than upon members of the general public. It suggests that legislators, for example, may desecrate the flag without penalty, while members of the general public may be prosecuted for the same act. I cannot believe that the legislature intended a lesser standard of respect and deference to the flag for its members than for private citizens.

Moreover, there is nothing in the statute which suggests that the political or patriotic demonstrations must be held under the aegis of a governmental group in order to qualify for the exemption.

Any common sense definition of political demonstration must include demonstration by the people in support of political action which they favor. This would include action by political parties, by Veterans groups, by welfare and civil rights groups, by police and fire and fraternal organizations as well as groups opposing American foreign policy.

This concept was recognized in *State ex rel. Maley v. Civic Action Committee,* 238 Iowa 851, 28 N.W. 2d

467 (1947), wherein the Iowa Supreme Court stated, that "political" means "having to do with the organization or action of individuals, parties, or interests that seek to control the appointment or action of those who manage the affairs of a state."

Accordingly, I believe appellant's actions were protected by the statutory exemption.

Since the legislature included the exemption in the Act, we should not ignore it. If the exemption is unwise or overly broad it is for the legislature to correct it and thus afford sufficient protection for the dignity of the flag.

Appellant, therefore, at the very least is entitled to a new trial where he would be represented by counsel. I would, however, at this time, discharge appellant as I believe his actions were exempt from prosecution for the reasons stated above.