## Commonwealth v. Sgorbati

*Marvin Miller,* for Commonwealth.
*Bernard L. Segal,* for defendant.

LEVIN, J., May 4, 1970.—Defendant in this case is charged with "Desecration of Flag," a violation of section 211 of The Penal Code of June 24, 1939, P. L. 872, as amended, 18 PS §4211, as well as the summary charges of breach of the peace and disorderly conduct.

The facts out of which these charges arose centered about defendant's actions as he was reporting to take his preinduction physical. He reported to his local board and rode one of the buses to the induction center on Broad Street, clad only in white boxer shorts with an American flag draped around his shoulders. There was no disruption on the bus and no interference with the normal reporting procedures until defendant alighted at the induction center. At that time, he was taken into custody by the police, to whom he offered no resistance. The flag at all times

was in a new condition, never dirty, unmarked and undamaged, with no indication of any abuse or misuse, according to the Commonwealth's own witness.

The evidence offered by the Commonwealth is clearly insufficient to sustain a charge of disorderly conduct or breach of the peace. No loud, boisterous, unseemly conduct nor interference with the public necessity has been shown: Commonwealth v. Greene, 410 Pa. 111 (1963). Action which is unquestionably in bad taste, unaccompanied by proscribed behavior, does not in and of itself constitute either of these offenses.

Turning to the more serious charge of "Desecration of Flag," we find that the applicable parts of The Penal Code prohibit casting contempt upon the flag by words or acts. Neither the poor judgment used by this defendant nor the gaucherie of his actions are sufficient to make out the crime specified in the statute. He must be shown to have cast contempt upon the flag. However misguided his actions, defendant's sincerity and belief in the correctness of the ideas and opinions which he was attempting to demonstrate were clear. In his testimony, defendant stated to the court, "Well, Your Honor, I love this country. . ." and, in explaining his actions, he further stated, "that's really the only way I could see to express my feelings, because you could go over there and be killed. They'd send you home with your body draped in a flag. So why can't I go to them alive with the flag around me?" Defendant testified that he wore this flag to demonstrate his feelings. In answer to our question as to what message he was trying to convey, he stated that "I loved this country. I'm glad to be a part of it, but I object to the war. I was going for my physical."

In short, he disclosed no intent to cast contempt upon the flag and, indeed, were the flag not a sym-

bol of great meaning, it could not have been chosen for this demonstration. We emphasize that the flag was not mutilated nor made into a jacket or part of an article of clothing, but was at all times clean and well cared for. While there are more appealing and appropriate methods to demonstrate one's feelings, tactlessness and poor judgment are not criminal.

Furthermore, the statute under which the Commonwealth seeks to proceed specifically exempts political demonstrations from its scope. It would be illogical to think that the scope of this exemption went only to recognized political activity, for it is in the demonstrations of the regularly organized political parties of this country that we are least likely to find the type of activity which this statute is designed to prohibit.

Rather, the exemption must be read to exempt from coverage of this statute *all* demonstration by the people in support of or against political action. In this case, defendant was clearly expressing opinion on a very political topic with the intention of influencing the actions of those who manage the affairs of state. As such, the legislature has exempted defendant's activity from coverage by this statute. See Commonwealth v. Haugh, 215 Pa. Superior Ct. 160, 161 (dissenting opinion of Hoffman, J.); State ex rel. Maley v. Civic Action Committee, 238 Iowa 851, 28 N.W. 2d 467 (1947).

Finally, we note that to give this exemption a more limited reading would amplify the already serious question of the validity of this statute in view of the recent Federal decision by a three-judge court in the case of Hodson v. Buckson, 7 Cr. L. Rptr. 2025 (1970).

In that case, a statute was held to violate the Federal Constitution when it concerned itself not only with the method of flying the flag but also with the attitude of the person flying it. The court further cited as evidence of overbreadth that the statute did not

"limit itself to those who fly the flag. Any act which casts contempt upon or defiles it, whether affecting it physically, or not, is potentially illegal. Gestures or salutes which identify unpopular or controversial groups may apparently be forbidden": Id. at 2026.

However, in view of our decision here, it is unnecessary to determine the constitutionality of the statute before us. We find defendant not guilty of the offenses charged.

Although we have not ascended the constitutional plateau, it is perhaps not amiss to quote from the opinion of Justice Jackson:

"Those who begin coercive elimination of dissent soon find themselves exterminating dissenters. Compulsory unification of opinion achieves only the unanimity of the graveyard. . .

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein": West Virginia State Board of Education v. Barnette, 319 U.S. 624, 641-42 (1943).