## Commonwealth *v.* Tressler, Appellant.

Submitted December 9, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*J. Michael Williamson*, Public Defender, for appellant.

*Bernhard Dohrmann*, District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 30, 1972:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal from appellant's convictions for fornication and bastardy. Appellant's sole contention in this appeal is that the lower court improperly refused his timely request for a blood grouping test at county expense to determine paternity pursuant to the Uniform Act on Blood Tests.[1]

Appellant was unrepresented by counsel at his arraignment and the Public Defender of Clinton County was appointed to represent him. Prior to trial appellant's counsel petitioned the lower court to order that appellant, the prosecutrix and the child submit to blood grouping tests at county expense. This petition was denied. At trial this request was renewed, and the lower court questioned appellant concerning his financial ability to pay for such tests. The Court determined that appellant was not working, had not worked for five months, was living with his parents who were supporting him and had not attempted prior to trial to raise the money necessary for the tests either by working or through his family.

The Court then concluded that appellant was not entitled to have the test performed at county expense. Appellant argues that this holding was erroneous.

The Uniform Act on Blood Tests, supra, provides inter alia, that in all prosecutions for fornication and bastardy a defendant may raise a defense to the prose-

---

[1] The Act of July 13, 1961, P. L. 587, 28 P.S. §307.1 et seq.

cution on the basis that his blood type does not match that of the prosecutrix and the child.[2]

Appellant contends that if he is not provided with the blood tests at county expense, he is made subject to an invidious discrimination based on his poverty and as such is denied the equal protection of the law.

The leading case in this regard is *Griffin v. Illinois,* 351 U.S. 12 (1956). In *Griffin,* the Supreme Court held that all indigent defendants must be provided with a free trial transcript for the purpose of perfecting an appeal. The Court indicated that a man's personal assets cannot determine if he will be given the opportunity to have an adequate defense: "In this tradition, our own constitutional guarantees of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system. All people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American Court'." Citing *Chambers v. Florida,* 309 U.S. 227, 241. See also *Yick Wo v. Hopkins,* 118 U.S. 356, 369.

In this appeal, the Commonwealth recognizes the thrust of appellant's *Griffin* claim but seeks to distinguish its applicability to fornication and bastardy proceedings on the basis that equal protection claims can only be raised in "serious" cases.

---

[2] "This Act shall apply to criminal cases subject to the following limitations and provisions . . . (c) the court may direct a verdict of acquittal upon conclusions of all the experts under the provisions of Section 4, otherwise the case shall be submitted for determination upon all the evidence. . . ." 28 P.S. Section 307.6.

"If the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child the question of paternity, parentage or identity of a child shall be resolved accordingly." 28 P. S. Section 307.4.

This position is, however, untenable for a variety of reasons.

First, in the recent case of *Mayer v. Chicago,* 404 U.S. 189 (1971), Illinois attempted to bar an indigent defendant from securing a trial transcript on appeal because the defendant had not been convicted of a felony. In requiring that Illinois must provide the transcript at state expense, the Court stated: "[t]he size of a defendant's pocketbook bears no more relationship to his guilt or innocence in a nonfelony than in a felony case." U. S. at 196. Such language negates the Commonwealth's distinction between "serious" and "nonserious" cases.

Second, while it is true that a conviction for fornication and bastardy carries a maximum sentence of a $100 fine, such conviction also can have drastic collateral consequences. A conviction is conclusive in establishing the defendant's obligation to support the child. *Commonwealth ex rel. Marshall v. Ebbert,* 212 Pa. Superior Ct. 553, 243 A. 2d 143 (1968). Such support obligation continues until the minority ceases or the minor becomes emancipated. This may cost the defendant many thousands of dollars in support payments which, if not paid, can lead to criminal attachment proceedings and imprisonment.[3]

Third, by being charged with an indictable offense, Pennsylvania Rule of Criminal Procedure 318 guaran-

---

[3] "[A]ny man charged by an unmarried woman with being the father of her bastard child, shall be the reputed father and if she persists in the charge . . . the same shall be given in evidence in order to convict such person of fornication. Such man, being thereof convicted, shall be sentenced, in addition to the fine aforesaid, to pay the expenses incurred at the birth of such child, and if such child is born dead, or shall die during the continuance of the order for the maintainance of said child . . . to perform such order for the maintainance of said child, as the courts shall direct.

tees the defendant an attorney, even if he cannot afford one. The American Bar Association's Standards Relating to Providing Defense Services indicate that collateral necessary defense services should be furnished to indigent defendants. Section 1.5 of the ABA Standards Relating to Providing Defense Services provides that a "Defender Plan (whereby free counsel are provided to indigent defendants) should provide for investigatory, expert and other services necessary to an adequate defense."[4]

The trial court, in its opinion, agreed with the validity of the foregoing. The Court, however, held that appellant was not indigent so as to qualify for a free blood test. The lower court reasoned that bail had been posted on appellant's behalf and that he had not made the "necessary effort to raise the relatively small sum needed for [the] purpose" of having a blood test, "a sum which would have posed no substantial hardship to him. It seemed to us, therefore, that there was sufficient potential to enable him to raise the necessary expenses and hence, our refusal to direct payment by the county was fully warranted."

The conclusion by the lower court concerning appellant's ability to raise money to pay for the blood test during the time from his arraignment to trial, however,

---

"After a hearing on the petition of any interested party, such order for the maintainance of such child may be increased or decreased from time to time by said court before or after the expiration of the term at which such man was sentenced." The Act of September 28, 1951, P. L. 1543, Section 1, 18 P.S. Section 4506.

[4] In accord with this policy is the Criminal Justice Act, 18 U.S.C. §3006 A (a), which provides that an indigent defendant in the federal courts shall have the right to obtain, at government expense ". . . expert and other services necessary to an adequate defense."

See also *Commonwealth v. Phelan*, 427 Pa. 265, 234 A. 2d 540 (1967), where it was held that appointed counsel is entitled to auxiliary defense aids.

was without support in the record. Appellant testified that during such time he was out of work and supported solely by his parents. No testimony or evidence was adduced which would indicate that work was available to appellant during this time. In light of appellant's testimony that no such work was available to him, the court had no basis on the record for finding otherwise.

This is in accord with Judge WATKIN's statement for our Court in *Commonwealth ex rel. Brown v. Hendrick,* 220 Pa. Superior Ct. 225, 283 A. 2d 722 (1971), wherein it was held that the lower court acted improperly in summarily denying appellant's request for free counsel. "The record is silent as to his earnings and earning power; his skill, his work record, education and ability to work. There was no attempt to find out the reason for his failure to work, only the answer: 'I haven't been able to get a job. I've been trying, but I can't get one'. The court [in disbelieving such testimony] seemed to rely entirely on his physical appearance. This is not enough."[5]

The lower court's reliance on the fact that bail was posted on appellant's behalf was also misplaced. The ABA Standards Relating to Providing Defense Services specifically provides in this respect that: "[C]ounsel [and presumably related defense services] should not be denied to any person merely because his friends or relatives have resources adequate to retain counsel or because he has posted or is capable of posting bond." Section 6.1.[6]

---

[5] See also my dissenting opinion in *Commonwealth v. Haugh,* 215 Pa. Superior Ct. 160, 163, 256 A. 2d 874 (1969), rev'd on other grounds at 439 Pa. 212, 266 A. 2d 657 (1970), wherein it was stated that if there is no basis on the record for the trial court finding that appellant could afford counsel, such conclusion cannot be upheld.

[6] It should be noted that the resources of appellant's family as stated on the record would not justify a conclusion that the family

Accordingly, the court below erred in not providing appellant with a blood test at county expense. Therefore, I would vacate the judgment of sentence and order a new trial.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.

---

could afford to pay for a blood test, even if they were obligated to provide defense services to appellant.