474 A.2d 333

**Regis J. JOHNSON, Appellant,**

v.

**Elizabeth J. BRINKER, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 27, 1983.

Filed April 13, 1984.

Robert J. Wetzel, Uniontown, for appellant.

Steve P. Leskinen, Uniontown, for appellee.

Before BROSKY, McEWEN and BECK, JJ.

McEWEN, Judge:

May the payment of the costs of court ordered blood grouping tests in an action for support of a child born out of wedlock be imposed upon an indigent defendant who denies paternity as a condition precedent to administration of the tests? The Common Pleas Court, after determining that both the appellee-mother and appellant-putative father were indigent and unable to make payment for the blood tests, concluded that the costs of blood grouping tests should be paid in advance by the requesting party, in this case, appellant. We reverse.

Appellee, shortly after the birth of her daughter, commenced an action for support on June 16, 1982, by filing a complaint against appellant, the alleged father of the child born out of wedlock. A solicitor for the domestic relations section of Fayette County, on behalf of appellee, then filed a motion for a non-jury paternity trial. Appellant, represented by the Southwestern Pennsylvania Legal Aid Society, Inc., thereafter filed, pursuant to the Uniform Act on Blood Tests to Determine Paternity,[1] a petition in which he denied paternity and sought thereby to establish his non-paternity by requesting that the court:

1. Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June 27, 1978, 42 Pa.C.S. § 6131–6137. Section 6133 of the Act provides, in part:

In any matter subject to this subchapter in which paternity... is a relevant fact, the court... upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests.

(1) Appoint experts qualified as examiners of blood types;

(2) Order and Direct [appellee, the child and appellant], to submit to various blood grouping tests before these experts for the purpose of determining whether [appellant could] be excluded as being the father of the said minor child ...;

(3) Direct that compensation for these experts be paid by the County of Fayette in light of [appellant's] indigency, or, in the alternative, that the said compensation be otherwise taxed as costs and/or allocated among the parties and the county in such manner as the Court deems most appropriate, as per 42 Pa.C.S.A. § 6135....

Appellant also alleged in his petition that he was "unemployed and without income or assets sufficient to pay for the costs of said tests" and included with the petition an "Application Form for Blood Test In Forma Pauperis." The court, after concluding that both parties were indigent, on October 29, 1982, entered two orders, one of which granted the petition of appellant for blood testing and directed "[t]hat the costs of said blood grouping tests are to be paid by the defendant." The other order denied the application of appellant to proceed in forma pauperis for blood tests, but stayed all proceedings so that appellant could file an interlocutory appeal by permission.[2] The court then granted the application of appellant for leave to appeal in forma pauperis,[3] and this court, by per curiam order, granted the petition of appellant for interlocutory review.[4]

**2.** We note that this order appears to also deny the petition of appellant for blood testing. Since the other order contemporaneously entered by the court clearly and expressly granted the petition of appellant for blood testing, and since the opinion of the court addresses only the issue of costs, we construe the combined effect of the two orders as (1) a grant of the motion for submission to blood tests, and (2) a denial of the request that the tests be paid for by the county or otherwise proportioned in a manner deemed appropriate by the court.

**3.** See Pa.R.A.P. 552.

**4.** The solicitor for the domestic relations section of Fayette County has neither briefed nor presented argument upon the merits of this

Initially we observe that "[t]here is no situation of more monumental importance, or more worthy of due process protection, than the creation of a parent-child relationship." *Corra v. Coll,* 305 Pa.Super. 179, 193, 194, 451 A.2d 480, 488 (1982). In *Corra,* this court declared "that denial of counsel for indigent defendants in civil paternity actions in Pennsylvania is inconsistent with due process", *id.,* 305 Pa.Superior Ct. at 185, 451 A.2d at 483, and emphasized the "need for procedural safeguards at a paternity hearing" since "[o]nce paternity is established, that finding is *res judicata* and cannot be relitigated in a subsequent proceeding." *Id.,* 305 Pa.Superior Ct. at 189, 451 A.2d at 486. Accordingly, the rights of indigent paternity defendants must be protected, otherwise the " 'courts risk finding not the right man, but simply the poorest man to be the father of a child.' " *Id.,* 305 Pa.Superior Ct. at 192, 451 A.2d at 487 *quoting Salas v. Cortez,* 24 Cal.3d 22, 31, 154 Cal.Rptr. 529, 535, 593 P.2d 226, 232 (1979), *cert. denied,* 444 U.S. 900, 100 S.Ct. 209, 62 L.Ed.2d 136 (1980).

Pennsylvania has long recognized the evidentiary value of blood grouping tests in paternity actions:

> [T]he first of many thousands of reported cases in America on this subject (according to 163 A.L.R. 940) is *Commonwealth v. Zammarelli,* 1931, 17 Pa. Dist. & Co. R. 229, in which the late Judge Morrow, of Fayette County, granted the defendant a new trial in a bastardy case because the uncontradicted evidence of a medical expert called by the defendant was that blood tests showed the defendant could not have been the father of the child.

*Commonwealth v. Coyle,* 190 Pa.Super. 509, 512, 154 A.2d 412, 413 (1959) (citation omitted). *See also Hummel v. Smith,* 301 Pa.Super. 276, 286–87, 447 A.2d 965, 970 (1982) (Beck, J., concurring); *Commonwealth v. Gromo,* 190 Pa. Super. 519, 154 A.2d 417 (1959). The United States Supreme Court in *Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202,

appeal, but has submitted a formal statement which indicates that "the brief of appellant clearly summarizes the issues and such relevant case law as is in existence...."

68 L.Ed.2d 627 (1981), studied a Connecticut statute which charged the costs of blood grouping tests in a paternity action against the party requesting them, and held that the statute violated the due process guarantee of the Fourteenth Amendment when, in application, the statute operated to deny blood grouping tests to a defendant because of his lack of financial resources. *Id.* at 17, 101 S.Ct. at 2211, 68 L.Ed.2d 627. It is to be noted that the Court acknowledged "the unique quality of blood grouping tests as a source of exculpatory evidence", and stated that while a blood grouping test cannot conclusively establish paternity, it can demonstrate non-paternity and thereby "scientifically exclude the paternity of a falsely accused putative father." *Id.* at 7, 101 S.Ct. at 2206, 68 L.Ed.2d 627. Moreover, the Court stated:

> The ability of blood grouping tests to exonerate innocent putative fathers was confirmed by a 1976 report developed jointly by the American Bar Association and the American Medical Association. The joint report recommended the use of seven blood test 'systems' ABO, Rh, MNSs, Kell, Duffy, Kidd and HLA—when investigating questions of paternity. These systems were found to be 'reasonable' in cost and to provide a 91% cumulative probability of negating paternity for erroneously accused Negro men and 93% for white men.

> The effectiveness of the seven systems attests the probative value of blood test evidence in paternity cases. The importance of that scientific evidence is heightened because '[t]here are seldom accurate or reliable eyewitnesses since the sexual activities usually take place in intimate and private surroundings, and the self-serving testimony of a party is of questionable reliability.' As Justice BRENNAN wrote while a member of the Appellate Division of the New Jersey Superior Court:

>> "[I]n the field of contested paternity ... the truth is so often obscured because social pressures create a conspiracy of silence or, worse, induce deliberate falsity.

The value of blood tests as a wholesome aid in the quest for truth in the administration of justice in these matters cannot be gainsaid in this day. Their reliability as an indicator of the truth has been fully established. The substantial weight of medical and legal authority attests their accuracy, not to prove paternity, and not always to disprove it, but 'they can disprove it conclusively in a great many cases provided they are administered by specially qualified experts'...."

*Id.* at 7–8, 101 S.Ct. at 2206–07, 68 L.Ed.2d 627 (citations omitted). The Court, in stressing the compelling interest in the accuracy of a paternity determination, found that "because of its recognized capacity to definitely exclude a high percentage of falsely accused putative fathers, the availability of scientific blood test evidence clearly would be a valuable procedural safeguard in such case." *Id.* at 14, 101 S.Ct. at 2209, 68 L.Ed.2d 627. Since blood tests are highly accurate, reliable and dependable and, therefore, difficult to refute, the Court concluded that "access to blood grouping tests for indigent defendants... would help to ensure the correctness of paternity decisions...." *Id.*

The statute upon which we focus in this appeal provides:

§ **6135. Compensation of experts**

The compensation of each expert witness appointed by the court shall be fixed at a reasonable amount. It shall be paid as the court shall order. Subject to general rules, the court may order that it be paid by the parties in such proportions and at such times as it shall prescribe or that the proportion of any party be paid by the county and that after payment by the parties or the county, or both, all or part or none of it be taxed as costs in the action. Subject to general rules, the fee of an expert witness called by a party but not appointed by the court, shall be paid by the party calling him, but shall not be taxed as costs in the action.

42 Pa.C.S. § 6135. This section of the Act makes clear that the court must direct the manner by which appointed experts are to be paid and vests the court with the discretion

to initially apportion the costs of blood testing between the parties and the county. In the instant case, the court correctly noted that the statute "does not require the Court to assess the costs to the County but permits the Court to assess the costs to the County", but decided on the basis of potential economic hardship to the county as a result of the expense of blood grouping tests that "the costs should be assessed on the party requesting the tests and not on the County." However valid and reasonable the social reasons the distinguished Judge Fred C. Adams advanced for his holding, we are compelled to the conclusion that a hearing court must, in these circumstances, order that the costs of the blood grouping tests first be advanced by the county.

While the issue of who should bear the costs of blood grouping tests is one of first impression in this Commonwealth, the United States Supreme Court, in *Little v. Streater, supra,* expressed approval of the cost allocation method contained in the Uniform Act on Blood Tests to Determine Paternity adopted in Pennsylvania (42 Pa.C.S. § 6135), and noted:

Other jurisdictions also have statutes by which blood grouping tests can be made available to indigents. See, e.g., Ala.Code § 26–12–5 (1977); D.C.Code § 16–2343 (Supp. V 1978); Haw.Rev.Stat. § 584–16 (1976); Md.Ann. Code § 16–68G (Supp.1980); Mich.Comp.Laws § 722.-716(c) (1970); Minn.Stat. § 257.69(2) (1980); N.D.Cent. Code § 14–17–15 (Supp.1977); Utah Code Ann. § 78–25–23 (1977); Wis.Stat.Ann. § 767.48(5) (West Supp.1980). In addition, the highest courts of Colorado, Massachusetts and West Virginia have held that putative fathers may not constitutionally be denied access to blood grouping tests on the basis of indigency. See *Franklin v. District Court,* 194 Colo. 189, 571 P.2d 1072 (1977); *Commonwealth v. Possehl,* 355 Mass. 575, 246 N.E.2d 667 (1969); *State ex rel. Graves v. Daugherty,* 266 S.E.2d 142 (W.Va.1980).

*Id.* at 16 n. 11, 101 S.Ct. at 2210 n. 11, 68 L.Ed.2d 627. *See also Commonwealth v. Tressler,* 221 Pa.Super. 94, 289 A.2d 471 (1972) (Hoffman, J., dissenting).

We, therefore, hold that henceforth, an order for submission to blood grouping tests to determine paternity may not require any indigent party to pay any portion of the compensation of the appointed expert(s) as a condition precedent to the administration of the tests.[5]

Order reversed and case remanded for disposition in accordance with this opinion. Jurisdiction is relinquished.[6]

---

**5.** *Accord Michael B. v. The Superior Court of Stanislaus County,* 86 Cal.App.3rd 1006, 1010, 150 Cal.Rptr. 586, 589 (5th Dist.1978) (court cannot order prepayment of blood tests by indigent defendant in a civil paternity suit, but rather, must order that compensation of experts conducting the tests be initially paid by the county subject to being later taxable to the parties as costs in the action); *County of Ramsey v. S.M.F.,* Minn., 298 N.W.2d 40, 44 (1980) (preferable practice would be for county to ask putative father to take blood tests at county expense).

**6.** Due to our resolution of this issue, we need not address the further assertions of appellant that (1) "an indigent party defendant in a paternity proceeding has a statutory right to have blood tests performed upon request and without regard to his financial status"; and (2) "an effective denial of an indigent paternity defendant's request for blood testing, by requiring that such indigent prepay testing costs which are beyond his financial means, is a violation of due process guarantees."