Steven NORDGREN, Ron Lyle, Ronnie Lee Gardner, and Richard Ivan Lloyd, Plaintiffs,

v.

Anthony W. MITCHELL, Executive Director, Department of Social Services of the State of Utah, and John P. Abbott, Director of Recovery Services Division of the Department of Social Services of the State of Utah, and the State of Utah, Defendants.

Civ. No. C–80–0557W.

United States District Court, D. Utah, C. D.

Oct. 8, 1981.

Brian M. Barnard, Salt Lake City, Utah, for plaintiffs.

Carlie Christensen, Asst. Atty. Gen., for State of Utah, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This case is before the court on cross-motions for summary judgment, based on stipulated facts, and essentially involves the right to have counsel appointed for indigent, incarcerated defendants in paternity actions.

The plaintiffs here are all indigent inmates at the Utah State Prison who are defendants in paternity actions pending in the Utah State courts. The principal plaintiff, Steven Nordgren, unsuccessfully petitioned the Third Judicial District Court of Utah to appoint counsel for his defense of the paternity action, and the Utah Supreme Court denied a petition for a discretionary interlocutory appeal. Nordgren was unable to obtain representation from either the

---

Legal Aid Society of Salt Lake or Utah Legal Services, Inc. The other plaintiffs have likewise unsuccessfully sought appointment of counsel in their respective paternity actions.

Plaintiffs seek in the present lawsuit a declaratory judgment ordering the state to appoint counsel for them in the paternity actions, arguing that the failure to appoint counsel violates their due process and equal protection rights under the Fourteenth Amendment, and their privilege against self-incrimination under the Fifth and Fourteenth Amendments.

Similar court actions have been previously decided by several state courts. In *Salas v. Cortez*, 24 Cal.2d 22, 154 Cal.Rptr. 529, 593 P.2d 226, *cert. denied*, 444 U.S. 900, 100 S.Ct. 209, 62 L.Ed.2d 136 (1979), the California Supreme Court held that where the state appears on behalf of a mother or child in a paternity action, an indigent defendant is entitled under due process to appointed counsel. That case was apparently decided, however, under the California Constitution's due process clause, as the majority specifically noted the more extensive due process rights granted by that constitution. *See id.*, 154 Cal.Rptr. at 532 n. 2, 593 P.2d at 229 n. 2. The Alaska Supreme Court reached a similar result, basing its decision specifically on the Alaska Constitution, which has been interpreted more broadly than the Federal Constitution. *Reynolds v. Kimmons*, 569 P.2d 799 (Alaska 1977). *See also, Artibee v. Cheboygan Circuit Judge*, 397 Mich. 54, 243 N.W.2d 248 (1976); *Hepfel v. Bashaw*, 279 N.W.2d 341 (Minn.1979).

These cases are not instructive here both because of their reliance on another state's constitutional law and because of two recent United States Supreme Court decisions that have since addressed similar issues and control the outcome in this action. Here, the parties have not argued that the Utah due process and equal protection clauses are interpreted more broadly than their federal counterparts. Plaintiffs' amended complaint does not even raise an issue under the Utah Constitution but appears to rely only on the Federal Constitution. While plaintiffs have cited Utah's "open courts" clause, Utah Const. art. I § 11, in a memorandum, they have not argued that it is more broadly interpreted than due process under the Fourteenth Amendment. Therefore, this court will look to federal law and specifically to the Supreme Court's two most recent decisions in this area.

In the first case, *Little v. Streater*, —— U.S. ——, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), the Court held that the failure to provide a blood grouping test for an indigent defendant in a paternity action violated due process. In the second case, *Lassiter v. Department of Social Services*, —— U.S. ——, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Court addressed the issue of whether the failure to appoint counsel for an indigent, incarcerated defendant in a parental status termination proceeding violated due process, concluding that it did not. Both of these cases looked initially to the test established in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine the due process right. That test requires a balancing of three factors: the private interests at stake, the governmental interest affected, and the risk that the procedures used will lead to erroneous results.

The *Little* Court described the defendant's interest in the accurate outcome of a paternity suit as "a compelling interest" and equated the situation to a parental status termination proceeding. The Court stated: "Just as the termination of such bonds demands procedural fairness, ... so too does their imposition." —— U.S. at ——, 101 S.Ct. at 2209 (citation to *Lassiter* omitted).

On analyzing the second factor in the present case, it is apparent that the purpose of state involvement in paternity actions is to establish paternity so the state can be reimbursed by the father, at least in part, for both past and future public support of the child. *See* Utah Code Ann. § 78–45b–3 (1977). Hence, the state interest is largely, though not exclusively, financial. Utah statutes provide that the father of an illegitimate child is liable to the same extent as

the father of a legitimate child "for the reasonable expense of the mother's pregnancy and confinement and for the education, necessary support and funeral expenses of the child." *Id.* § 78–45a–1. The Department of Social Services is deemed a "real party in interest" in these paternity actions once it has paid support, *id.* § 78–45b–3(2), and can bring the action in its own behalf, *id.* § 78–45a–5(2). Further, the mother of the child is required to "do whatever . . . is necessary in connection with the cause of action" and is prohibited from doing anything to prejudice the rights of the state. *Id.* § 78–45b–3(3).

Beyond the state's interest in recovering its support expenditures from the father, there exists an additional financial incentive for its involvement in paternity actions. The state may be entitled to reimbursement of 75% of the funds it expends in operating an approved child support plan. 42 U.S.C. § 655(a)(1) (1976 & Supp. III); 45 C.F.R. § 304.20 (1980). Such a plan must provide that the state agency undertake to establish paternity. 45 C.F.R. § 302.31 (1980).

The *Little* Court noted in analyzing the third *Eldridge* factor the valuable procedural safeguard that blood test evidence represents, and the relative insignificance of the state's purely financial interest. The Court concluded that, in light of the unusual evidentiary burden Connecticut places on defendants in paternity actions, *see* —— U.S. at ——, 101 S.Ct. at 2207, the defendant was effectively denied "a meaningful opportunity to be heard" and thus denied due process of law. *Id.*

The present action diverges from *Little* in that the procedural deficiency urged as violating due process is the need for counsel instead of the failure to provide a blood grouping test. For this reason, the *Lassiter* decision must also be reviewed.

*Lassiter*, dealing with a right to counsel question, as does the present case, added an additional step to the *Mathews v. Eldridge* test. The Court noted a historical "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." —— U.S. at ——, 101 S.Ct. at 2159. After balancing the three factors, the Court required their "net weight" to be further balanced against this presumption. The *Lassiter* Court summarized the *Eldridge* factors in a parental status termination case much like they did in the *Little* paternity action:

> [T]he parent's interest is an extremely important one (and may be supplemented by the dangers of criminal liability in some termination proceedings); the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding and the incapacity of the uncounselled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high.

*Id.* —— U.S. at ——, 101 S.Ct. at 2160.

Thus, the *Lassiter* Court was unable to define for all parental status termination cases what the risk of an erroneous result would be and could not say whether the presumption would be overcome in all cases. The Court therefore refused to establish a general rule for the right to appointed counsel in termination cases.

The Court explained:

> If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the *Eldridge* factors did not overcome the presumption against the rights to appointed counsel, and that due process did not require the appointment of counsel. But since the *Eldridge* factors will not always be so distributed, and since "due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed," *Gagnon v. Scarpelli,* [411 U.S. 778, 788, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973)], neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding.

*Id.* The court therefore opted to "leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review."

■ This court finds the *Lassiter* decision, inasmuch as it concerns the right to appointed counsel in situations on the flip-side of paternity actions, and insofar as it is complemented by *Little*, to control the decision here. Therefore, it is clear that the decision as to whether due process requires appointment of counsel in a paternity action is vested in the state trial court, subject to appeal. The proper procedure for these paternity defendants, then, if they seek to challenge the state trial courts' determinations, is to execute a proper appeal at the conclusion of those actions.

The court so holds with full knowledge of the particular circumstances presented in this case. Plaintiffs' counsel has fully briefed the court regarding the inadequate legal facilities available to inmates at the Utah State Prison, and regarding the possible denial of access to the courts which such a situation may present. Plaintiffs are not, however, seeking an order requiring a more adequate library at the prison, but seek to have this court order counsel appointed in lieu thereof. This goes far beyond the requirements established in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Indeed, the State appears to have complied with the *Bounds* requirements by providing legal assistance in the preparation and filing of initial pleadings, and such assistance would presumably meet also the requirements of the Utah Constitution's "open courts" clause.

This does not mean that the possible inadequacy of legal facilities is irrelevant. On the contrary, it could be very relevant in the state trial court's decision as to the due process right to appointed counsel under the *Lassiter* test. This court, however, does not consider the situation to require a blanket ruling that all indigent, incarcerated defendants in paternity actions must be appointed counsel.

The court notes also the nature of many paternity actions and the safeguards provided by Utah statute. Many paternity actions do not involve complicated legal or evidentiary problems. Should a particular case appear to be developing otherwise, the state court would certainly consider these problems under the *Lassiter* test.

Further, the State provides for blood grouping tests to be made available to indigents without cost, where warranted. Utah Code Ann. § 78–25–23 (1977). These tests are undoubtedly the most important evidence in a paternity suit. The HLA tissue typing test alone can provide a 78% probability of negating paternity for erroneously accused defendants, and when the complete battery of seven serological tests is performed, the probability exceeds 90%. Miale, Jennings, Rettberg, Sell & Krause, *Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage*, 10 Family L.Q. 247 (1976). Indeed, the paternity action against one of the original plaintiffs in this lawsuit was dismissed when he was excluded from being the father on the basis of these tests.

■ While the court decides this case on due process grounds, it does not ignore the equal protection and self-incrimination arguments, but rather finds them unavailing. The result of an equal protection analysis would not differ from the result reached under due process, even assuming inmates to constitute a cognizable class in this situation. The plaintiffs' arguments regarding the privilege against self-incrimination are without merit because the adjudication of paternity alone does not incriminate the father. While one adjudicated to be the father could subsequently be charged with criminal non-support, he could only be so charged if he failed to provide the support required. Even though paternity is a substantial element in a non-support action, it does not itself incriminate the father.

Finally, the court notes that this decision concerns only what is constitutionally required. As the Supreme Court stated in *Lassiter*, "[a] wise public policy ... may require that higher standards be adopted

than those minimally tolerable under the Constitution." —— U.S. at ——, 101 S.Ct. at 2162. This court's role in our American system of justice is merely to determine the constitutional requirements and not to determine the wisdom of state policy.

Accordingly,

IT IS ORDERED that plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is granted, in accordance with this decision.