WAKE COUNTY, ex rel. EVELYN CARRINGTON v. DANIEL TOWNES

No. 128A81

(Filed 13 July 1982)

**Bastards § 10; Constitutional Law § 40— civil paternity suit by State—indigent defendant—no per se right to appointed counsel—trial judge determines what fairness requires**

There is no *per se* constitutional right to appointed counsel for an indigent defendant in a civil paternity suit, by whomever instituted under G.S. 49-14, because the necessary menace to personal liberty is clearly absent at that legal stage. However, when an indigent defendant moves for the appointment of counsel in a certain civil paternity suit, the trial judge shall determine in the first instance what true fairness requires in light of all the circumstances. When such a motion is made, the trial judge should proceed with an evaluation of the vital interest at stake on both sides and a determination of the degree of actual complexity involved in the given case and the corresponding nature of the defendant's peculiar problems, if any, in presenting his own defense without appointed legal assistance. Therefore, where the record clearly shows

that the trial judge did not respond to defendant's motion for counsel in the manner described, the cause should be remanded to the court for further proceedings.

APPEAL by plaintiff, pursuant to G.S. 7A-30(2), of the decision of the Court of Appeals (*Judge Becton*, with *Judge Whichard* concurring, and *Judge Robert Martin* dissenting) reported at 53 N.C. App. 649, 281 S.E. 2d 765 (1981). The Court of Appeals reversed the order entered *nunc pro tunc* by *Bullock, Judge*, on 15 July 1980 in a Civil Session of District Court, WAKE County.

The undisputed procedural facts of this case are competently set forth in the Court of Appeals' opinion, which we quote:

Wake County (County), through its Department of Social Services' Child Support Enforcement Agency, initiated this action on 4 February 1980 in order to obtain a civil adjudication that the defendant, Daniel Townes, is the father of Cory Daniel Carrington and to obtain an order directing defendant to make support payments for the child. The child is the illegitimate son of Evelyn Carrington, and Ms. Carrington is a recipient of Aid to Families with Dependent Children (AFDC) funds. Based on Ms. Carrington's allegations that the defendant is the father of the child, the County, pursuant to statute, filed this action to establish paternity.

Upon being served with the Complaint, the defendant, who is indigent, contacted East Central Community Legal Services (Legal Services) for assistance. Legal Services told defendant that federal regulations (45 CFR 1601) and office policies prohibit Legal Services from representing individuals Legal Services believes have a right to court-appointed counsel. Legal Services, however, did agree to make a limited appearance for the purpose of ensuring that defendant received appointed counsel. At a preliminary hearing on 16 April 1980, defendant filed an affidavit of indigency and a motion seeking appointment of counsel claiming that such an appointment was required by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I, Section 19 of the North Carolina Constitution. The trial court concluded in its order that "neither the due process clause of the United States Constitution nor Article I, Sec-

tion 19 of the North Carolina Constitution guarantees an indigent defendant the right to court-appointed counsel in civil paternity actions. . . ."

53 N.C. App. at 649-50, 281 S.E. 2d at 766.

Defendant immediately appealed (*in forma pauperis*) from the denial of his motion for the appointment of counsel pursuant to G.S. 1-277(a). The Court of Appeals subsequently reversed the trial court's order in a split decision and held that "an indigent defendant has a right to appointed counsel in paternity suits instituted by the State" based upon federal and state constitutional guarantees of due process. 53 N.C. App. at 650, 281 S.E. 2d at 766-67. The plaintiff County now appeals to this Court for reinstatement of the trial court's original order.

*Assistant Wake County Attorney, Shelley T. Eason, for plaintiff-appellant.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Clifton H. Duke, amicus curiae for plaintiff-appellant.*

*East Central Community Legal Services, by Gregory C. Malhoit and M. Travis Payne, for defendant-appellee.*

*North Carolina Civil Liberties Union, by Stanley Sprague, amicus curiae for defendant-appellee.*

COPELAND, Justice.

The dispositive issue, which is also one of first impression in our Court, is whether constitutional due process *guarantees* the provision of appointed legal counsel to an indigent defendant in a *civil* paternity suit instituted by a county on behalf of its department of social services' child support enforcement agency. We conclude that indigent defendants do not have an absolute constitutional right to appointed counsel in this legal setting and that due process affords only a *qualified* entitlement to appointed counsel as determined by the trial court on a case-by-case basis. In so holding, we direct and confine our constitutional analysis to the narrow issue precisely raised upon this limited record.

We begin with the general recognition that the strict distinctions formerly drawn between criminal and civil actions are no longer valid and that due process *presumptively* requires the ap-

pointment of legal counsel to represent an indigent defendant *if* his *actual* imprisonment, or comparable confinement, is a likely result in the *present* proceeding concerned.[1] *Lassiter v. Department of Social Services*, 452 U.S. 18, 26-27, 101 S.Ct. 2153, 2159, 68 L.Ed. 2d 640, 649 (1981); *see Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed. 2d 383 (1979); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed. 2d 656 (1973); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed. 2d 530 (1972); *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967). This essential guarantee of fundamental fairness means quite simply that an indigent person cannot be sent to jail, in any later proceeding to enforce the support order, unless he had the benefit of legal assistance and advocacy at the proceeding in which paternity was determined.

The entire thrust of a civil action under G.S. 49-14 is the determination of whether or not the defendant is the natural father of the illegitimate child in question. Even if he is found to be so, the defendant will not be imprisoned on that basis at the conclusion of the hearing. As we have stated many times, the mere begetting of a child, standing alone, is not a crime in this State. *Bell v. Martin*, 299 N.C. 715, 722, 264 S.E. 2d 101, 106 (1980); *State v. Ellis*, 262 N.C. 446, 449, 137 S.E. 2d 840, 843 (1964). It is true that a related threat of actual imprisonment, based *partially* upon a prior determination of paternity, *may* arise in *subsequent* criminal or civil enforcement proceedings if such becomes necessary to secure a defendant-father's support obligation to his child. *State v. McCoy*, 304 N.C. 363, 283 S.E. 2d 788 (1981); *State v. Green*, 277 N.C. 188, 176 S.E. 2d 756 (1970); *see, e.g., Mastin v. Fellerhoff*, 526 F. Supp. 969 (S.D. Ohio 1981); *Young v. Whitworth*, 522 F. Supp. 759 (S.D. Ohio 1981). However, it is plain that this uncertain "web of possibilities" concerning future sanctions or ramifications does not constitute an immediate threat of imprisonment in the initial civil paternity action itself, especially since the defendant may, in fact, prevail there on the critical issue of

1. This across-the-board due process right is primarily founded upon the Fourteenth Amendment to the United States Constitution. Our Court has previously noted that the Law of the Land Clause in Art. I, § 19, of the North Carolina Constitution encompasses concepts similar to, and not broader than, federal due process. *See Jolly v. Wright*, 300 N.C. 83, at n. 2, 92-93, 265 S.E. 2d 135, 142 (1980); *Horton v. Gulledge*, 277 N.C. 353, 359, 177 S.E. 2d 885, 889 (1970).

fatherhood. *State v. Walker*, 87 Wash. 2d 443, 446, 553 P. 2d 1093, 1095 (1976); *see also In Interest of J.A.K.*, 624 S.W. 2d 355, 357 (Tex. Ct. App. 1981). Thus, there is no *per se* constitutional right to appointed counsel for an indigent defendant in a civil paternity suit, by whomever instituted under G.S. 49-14, because the necessary menace to personal liberty is clearly absent at that legal stage. *Nordgren v. Mitchell*, 524 F. Supp. 242 (D. Utah 1981); *State v. Walker, supra.*

Our conclusion that there is no *absolute* due process right to counsel in *all* civil paternity suits against indigents does not, however, foreclose further constitutional inquiry into the matter. This is made clear in a recent decision of the United States Supreme Court concerning a due process claim for appointed counsel in an analogous civil setting: *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed. 2d 640 (1981).

In *Lassiter, supra*, the parental rights of an indigent mother to her son were terminated at a civil proceeding at which she was not afforded legal representation. The Supreme Court carefully examined its precedents regarding appointed counsel and emphasized anew the controlling elements in the due process equation, which had been set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976): the interests of the individual at stake, the interests of the government, and the overall risk that the procedures utilized in the particular proceeding will result in an erroneous decision. Against that background, the Court concluded that the indigent mother's constitutional claim had to be evaluated by balancing the foregoing elements and then setting "their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." 452 U.S. at 27, 101 S.Ct. at 2159, 68 L.Ed. 2d at 649. The Court proceeded to weigh the case before it as follows:

> The dispositive question, which must now be addressed, is whether the three *Eldridge* factors, when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus to lead to the conclusion that the Due Process Clause requires the appointment of counsel when a State seeks to terminate an in-

digent's parental status. To summarize the above discussion of the *Eldridge* factors: the parent's interest is an extremely important one (and may be supplemented by the dangers of criminal liability inherent in some termination proceedings); the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding and the incapacity of the uncounselled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high.

If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the *Eldridge* factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the *Eldridge* factors will not always be so distributed, and since "due process is not so rigid as to require that the significant interests in informality, flexibility and economy must always be sacrificed," *Gagnon v. Scarpelli, supra,* 411 U.S. at 788, 36 L.Ed. 2d 656, 93 S.Ct. 1756, 71 Ohio Ops 2d 279, neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in *Gagnon v. Scarpelli,* and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review. See, e.g., *Wood v. Georgia,* --- U.S. ---, 67 L.Ed. 2d 220, 101 S.Ct. 1097.

*Id.* at 31-32, 101 S.Ct. at 2161-62, 68 L.Ed. 2d at 652. The Court finally determined that, considering all of the pertinent circumstances depicted in the record, the trial judge had not deprived the indigent mother of due process by failing to appoint counsel for her in the termination hearing.[2]

---

2. It should be noted that the *Lassiter* case originated in North Carolina and that our General Assembly has since enacted specific legislation providing for the appointment of counsel to represent indigent persons in parental rights termination proceedings. G.S. 7A-289.27 and 7A-451(a)(15).

In summary, the constitutional import of *Lassiter* is that, in any action where an actual threat to personal liberty is lacking, but the interests of both sides thereto are nonetheless fundamentally compelling, the merits of a due process claim by an indigent party for appointed counsel are best determined by the trial court on a case-by-case basis. *See In Re Clark*, 303 N.C. 592, 601, 281 S.E. 2d 47, 53-54 (1981). Our Court has already adopted this approach in the context of nonsupport civil contempt cases. In *Jolly v. Wright*, 300 N.C. 83, 93, 265 S.E. 2d 135, 143 (1980), we stated:

> Since the nature of nonsupport civil contempt cases usually is not complex, due process does not require that counsel be automatically appointed for indigents in such cases; rather, the minimum requirements of due process are satisfied by evaluating the necessity of counsel on a case-by-case basis. *Gagnon v. Scarpelli, supra*, 411 U.S. at 790. We thus hold that due process requires appointment of counsel for indigents in nonsupport civil contempt proceedings only in those cases where assistance of counsel is necessary for an adequate presentation of the merits, or to otherwise ensure fundamental fairness.

We believe that a similar rule is appropriate in civil paternity cases.

It is obvious that the private interests of an indigent defendant in a civil paternity suit, whereby he is threatened with the imposition of the legal status and attendant obligations of a parent with respect to an illegitimate child, are substantial in social, family and economic terms. *See Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed. 2d 627 (1981). Accordingly, our law provides two important safeguards for innocent defendants in these actions: (1) the requirement that paternity be proved beyond a reasonable doubt, G.S. 49-14(b), and (2) the availability of court-ordered blood grouping tests upon the request of any party, G.S. 8-50.1. On the other hand, the administrative and pecuniary interests of a local department of social services, which is seeking reasonable and rightful support for an illegitimate child from a putative father, are also quite forceful, and the department's efforts in this regard should not be hindered by additional legalities, which are not already expressly required by statute, unless such are patently necessary to ensure constitutional equity on both sides of a paternity suit.

All things considered, we cannot say, as a matter of law, that representation by legal counsel is invariably an essential component of fairness in all such proceedings. As we have already said, there is but one factual issue in a paternity action, *i.e.*, whether the defendant is the father of the child, and, practically speaking, this is not an especially complex matter. *See Jolly v. Wright*, 300 N.C. 83, 265 S.E. 2d 135 (1980). The crux of most cases is credibility: simply deciding who to believe. Blood grouping tests can be helpful in this search for the truth. In any event, the number of witnesses at the hearing will be relatively few, since not many persons besides the mother and the defendant will be competent to testify specifically about the point in issue. Moreover, we perceive that the defendant will usually have at least some familiarity with the lay witnesses involved and what the nature of their testimony will be. [It would be a rare exception and certainly not the rule for the mother of an illegitimate child to "name" a total stranger as his or her father.] With the possible exception of expert witnesses, the defendant would not ordinarily experience overwhelming difficulty in conducting an informal, but sufficiently effective, cross-examination of the witnesses against him. We thus believe that, with appropriate guidance from the trial court as to how he may proceed and what he may request, an indigent defendant could generally present his own defense to the "charge" of paternity well enough without the aid of appointed counsel, although the unique circumstances of a particular case could indicate otherwise.

Consequently, we hold that the trial judge shall determine, in the first instance, what true fairness requires, in light of all of the circumstances, when an indigent makes a motion for the appointment of counsel in a certain civil paternity suit. *Accord Nordgren v. Mitchell*, 524 F. Supp. 242, 245 (D. Utah 1981): "it is clear that the decision as to whether due process requires appointment of counsel in a paternity action is vested in the state trial court, subject to appeal."[3] When such a motion is made, the trial court

_____

3. In its majority opinion below, the Court of Appeals referred to the authorities of several jurisdictions which have taken a broader view and adopted a *per se* standard for the appointment of counsel to indigents in paternity suits. 53 N.C. App. at 662, 281 S.E. 2d at 773. *See generally* Annot., 4 A.L.R. 4th 363 (1981). Those authorities are neither instructive nor persuasive here because they are based upon the individual constitutions or statutes of other states and not upon the

should proceed with an evaluation of the vital interests at stake on both sides and a determination of the degree of actual complexity involved in the given case and the corresponding nature of defendant's peculiar problems, if any, in presenting his own defense without appointed legal assistance. The judge must then weigh the foregoing factors against the overall and strong presumption that the defendant is not entitled to the appointment of counsel in a proceeding which does not present an immediate threat to personal liberty. *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed. 2d 640 (1981); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976).

The record in the instant case clearly shows that the trial judge did not respond to defendant's motion for counsel in the manner which we have just described. The judge correctly concluded, in his order denying the motion, that the indigent defendant was not *guaranteed* the right to court-appointed counsel. Record at 26. However, the record is devoid of any indication that proper individual consideration was given to the minimum requirements of fundamental fairness regarding this particular defendant in this particular paternity action. Specifically, the judge should have made some findings and conclusions concerning the following assertions in defendant's motion:

> The Defendant faces the possibility of an adjudication of paternity and an order of child support in this matter which significantly affects the Defendant's interests. In addition, the Defendant wishes to assert numerous defenses in this matter including a denial of the ultimate issue of the paternity of Corey Daniel Carrington. Defendant is unemployed and unable to afford counsel to present these defenses and the Defendant lacks the education and training to adequately prepare and present his own case. Record at 16-17.

In short, the incomplete state of the record precludes our final review of the ultimate question on appeal, that is, whether the

---

Fourteenth Amendment to the United States Constitution, as it has been authoritatively interpreted in the recent decision of *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed. 2d 640 (1981). *Nordgren v. Mitchell, supra*, 524 F. Supp. at 243. If a more expansive *per se* right to appointed legal counsel is to be given in this kind of civil case in North Carolina, the General Assembly, not this Court, must bestow it. *E.g.*, G.S. 7A-451.

trial judge erred in denying defendant's motion for appointed counsel in *this* case.

For the reasons stated herein, the decision of the Court of Appeals is modified, and the cause shall be remanded to the trial court for further proceedings not inconsistent with this opinion.

Modified and remanded.