673 S.W.2d 819 (1984)
B______, et al., Plaintiff-Respondent,
v.
B______, Defendant-Appellant.
No. 46225.
Missouri Court of Appeals, Eastern District, Division One.
June 29, 1984.
*821 Gary J. Morris, Clayton, for defendant-appellant.
Edward L. Joyce, St. Louis, for plaintiff-respondent.
KELLY, Presiding Judge.
Frederick E.B. brings this appeal from a judgment of the Circuit Court of St. Louis County, Missouri, declaring him to be the father of Nicole B., a minor, one of the plaintiffs in the case; awarding custody of said minor child to Carol B., a plaintiff in the case; requiring that he pay $60.00 per week as child support, $1,895.00 for medical expenses incidental to the birth of said minor child; $975.00 as attorney fees in connection with the trial proceedings and costs of $525.00 to Carol B. For reasons set out hereinafter we affirm in part and reverse in part.
The respondents filed their petition in the Circuit Court of St. Louis County on October 6, 1981, wherein they sought a declaration of parentage, custody of the minor child in Carol, reimbursement of medical expenses incurred by Carol incidental to the birth of the child, and child support. On the same day the petition was filed Carol B. was appointed next friend for her daughter, Nicole. Appellant wrote a letter to the trial court dated October 15, 1981, and filed with the court on October 19, 1981, in which he stated, "My plea to the above petition is not guilty." Seven paragraphs of this letter contained statements which constitute a denial that he parented the child, advised the court that he had insufficient funds to retain counsel to represent him in the proceeding, and requested that the trial court advise him as to what action he might take to defend himself inasmuch as he had no way to finance the action through a lawyer.
No lawyer entered an appearance on behalf of appellant; however he answered two sets of interrogatories and complied with a court order to submit to serological testing by the American Red Cross.
The cause came on for trial on June 3, 1982, and appellant appeared pro se. According to the evidence appellant and Carol B. were married for a brief time between August 5, 1978, and July 5, 1979, when the marriage was dissolved. Nevertheless between December of 1979 until July of 1980 she lived with appellant in his home at 4456 Chippewa in the City of St. Louis. During January thru April they had intercourse. In May of 1980, Carol learned she was pregnant and Nicole was born on December 26, 1980. During the months she lived with appellant she did not go out with other men nor associate with any other man. An expert from the American Red Cross testified that from the blood tests made on blood taken from appellant and the respondents, appellant could not be excluded as the father of Nicole. The child, Nicole, has a red birthmark on her neck at the hairline. Appellant has such a mark at the same place on his neck. Several others in appellant's family have the same type of birthmark. Appellant's son by a prior marriage also has the same birthmark.
Appellant admitted that he had intercourse with Carol a few times between January and April of 1980 and that he helped Carol with a "lot of money" beyond that required in their agreement in connection with the dissolution of their marriage; that he gave her checks to pay her doctor bills during the course of her pregnancy with Nicole, and that he gave her $500.00 cash a few days before she entered the hospital so she could be admitted because she had no insurance. He was with Carol in the delivery room when Nicole was born, but he claims he was there because Carol wanted him there so it would "look better for the family."
Appellant presents eight Points which he contends entitles him to a reversal of the trial court's judgment. His first Point is that the trial court lacked subject-matter *822 jurisdiction to determine the issues of paternity and child support. There is no merit in this contention.
In this proceeding the mother sought individually and as next friend of the minor child to obtain a declaration of paternity against the alleged father, reimbursement for necessary medical expenses incident to the birth of the child, and support money for the child in a proceeding under the Declaratory Judgment Act, Ch. 527. K.D.R. v. D.E.S., 637 S.W.2d 691, 694 [3] (Mo. banc 1982). Accordingly, the procedures of the Declaratory Judgment Act are to be followed.
Assuming, although not deciding, that the provision of the Uniform Child Custody Jurisdiction Act, §§ 452.440, 452.550 RSMo 1978[1] applies, jurisdiction under the Act is governed by § 452.450. The court which is competent to decide child custody matters has jurisdiction to make a child custody determination if the state is the home state of the child at the time of the commencement of the proceeding, it is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents have a significant connection with the state, or the child is physically present in the state and it appears that no other state would have jurisdiction under the prerequisites substantially in accordance with subdivision (1), (2) or (3) of § 452.450.
Respondents, in their verified petition, alleged that they resided at "5612 Wild Brook, St. Louis, Missouri 63129" from the date of the birth of the child, December 26, 1980, to the "present." The petition was filed on October 6, 1981. Appellant failed to deny these allegations in respondent's petition and they are therefore taken as admitted. Rule 55.09. The record before us is devoid of any evidence that either parent or the child had any contact or relationship with any state other than Missouri, nor has appellant made any contention that there was.
Under these circumstances we rule this Point against appellant.
Appellant's second and third Points attack the sufficiency of the evidence to support the judgment of the trial court that he is the father of the child.
In a paternity action, involving a child born out of wedlock, a prosecutrix must establish paternity by a preponderance of the evidence, unaided by the presumption of legitimacy afforded by marriage. Stegemann v. Fauk, 571 S.W.2d 697, 701[5] (Mo.App.1978). In this court tried case our standard of review is set out in Rule 73.01(c)(1) and Murphy v. Carron, 536 S.W.2d 30, 32[2] (Mo. banc 1976). We must sustain the decree or judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong.
We conclude that there was substantial evidence to support the trial court's finding that appellant is the parent of the minor child.
Appellant's Points IV, V, VI and VII are directed against the award to respondents of $60.00 per week child support, $1,895.09 expenses incidental to the birth of the child, $975.00 attorney fees, $450.00 for the serological test conducted by the American Red Cross, and $75.00 fee for the expert witness who testified concerning her interpretation of the blood tests.
Appellant's claim of error as to the child support award is that there was no substantial evidence of his financial resources and needs, and, even if there was some evidence to support the award, an amount of $60.00 per week is excessive because there is no substantial evidence to show (1) his financial condition and needs, (2) the expenses necessary to rear the child, and (3) the financial condition of the plaintiff.
*823 In Missouri the statutory provision relative to the rights and obligations of parents to support their children entitles a child born out of wedlock a right to support equal to that of a child born in wedlock. R______ v. R______, 431 S.W.2d 152, 154[2] (Mo.1968). The factors a trial court should consider in making a determination of child support are enumerated in § 452.340.[2]
The record on appeal reveals that respondent Carol submitted a signed and notarized monthly expense statement attached to her petition, and according to this document her monthly expenses were $647.35 and those of the child, $410.00. At trial she testified she earned $400.00 a month, and requested that she be awarded $300.00 per month as "partial support" for the child.
However, the evidence of the financial condition of appellant was not substantial. He testified that he owned a restaurant and lounge in the City of St. Louis, and that he was a manufacturer's agent for two companies which manufactured body and shop equipment, but that one of these was "going under." His taxable income for 1981 was "right at $17,000.00." In his "Answer" he stated that he has six children of a prior marriage and that he has been paying child support to his first wife for eleven years, but he did not specify the monetary amount involved in these support payments.
A father has the primary responsibility for support of his child and, where he is the non-custodial parent, one of the factors to be considered in allocating child support is the financial resources and needs of said non-custodial parent. § 452.340(6). In determining the proper amount of child support, courts traditionally have considered the entire circumstances of the father and not just his income. Fugate v. Fugate, 510 S.W.2d 705, 706[1] (Mo.App. 1974). The court should consider the present income of the father as well as his assets and liabilities and any other factors relevant to his ability to provide support. McNultey v. Heitman, 600 S.W.2d 168, 174[19] (Mo.App.1980).
The transcript of the evidence in this case consists of twenty-six pages. During plaintiffs' case, one and one-half pages are devoted to establishing the needs of the child to support the mother's request for $300.00 child support. Appellant did not cross-examine her on this question.
During the defendant's case it was the trial court who inquired of the defendant concerning his employment and his taxable income for the year 1981. Plaintiff's attorney, on cross-examination following the inquiry by the trial court, developed the fact that defendant also was employed as a manufacturer's agent. These inquiries cover one page of the transcript of the evidence.
It is clear that the only evidence before the trial court on the financial resources and needs of appellant was his 1981 estimated taxable income of $17,000.00. There was no evidence of his assets or liabilities nor of his needs.
We hold, that under these circumstances, it was error for the trial court to award $60.00 per week child support and reverse the judgment of the trial court making such award and remand the cause to the trial court with directions to conduct an evidentiary hearing into the financial resources of the appellant, including his assets and liabilities, income, needs and any *824 other factors relevant to his ability to provide support for the child, Nicole.
Appellant's next Point is that the trial court erred in ordering him to pay Carol the medical expenses incidental to the birth of Nicole. Respondent's petition alleged that Carol had expended funds for medical and hospital expenses incident to the birth of the child in the sum of $1,895.09. At trial she was permitted, without objection, to testify that the hospital bill was "$1,949.00 or something like that." She also testified, without objection, that her doctor bill was $450.00.
On appeal, for the first time, appellant contends this evidence was inadmissible because it is hearsay, unreliable, speculative, offered without a proper foundation, and that there was no testimony as to what is the basis for Carol's testimony, what services were performed or whether these services were necessary. By his failure to object to this evidence at trial appellant has failed to preserve this Point for review. Niederkorn v. Niederkorn, 616 S.W.2d 529, 535[11] (Mo.App.1981).
Appellant urges us to review this Point as "plain error." We decline his invitation because we are not prepared to find that a manifest injustice or miscarriage of justice has resulted.
Appellant's sixth Point Relied On is that the trial court erred in ordering him to pay respondent's attorney fees of $975.00 because (1) he was not granted or allowed the opportunity to cross-examine plaintiff's counsel concerning his testimony about the attorney fees, and (2) there was no competent or substantial evidence to support such an award.
In paternity suits attorney's fees have been allowed on the basis of the trial court's equitable jurisdiction to care and provide for the welfare of minors. Stegemann v. Fauk, id. 571 S.W.2d l.c. 701[8]. This is the same rule in suits for support of a child born out of wedlock. W.B.M. v. G.G.M., 579 S.W.2d 659, 661, 662[5] (Mo. App.1979).
The transcript shows that after the trial court announced that the evidence "warranted a finding of paternity, and judgment of $1,895.09 for medical expenses and a continuing order for support in the amount of $60.00 a week," respondent's counsel said:
Your honor, I would add one thing further, the attorney's fees. I have thirteen hours up to this date, and at $75.00 an hour, that would be $975.00 spent on this case up to yesterday, and I ask the Court issur [sic] an order.
The trial court then said that the order would include attorney's fee of $975.00.
There is nothing in the record to indicate that appellant was denied cross-examination of respondent's counsel. He made no request to cross-examine on the question of attorney's fees.
Courts are themselves experts on the question of attorney's fees, and the judge who personally tries the case and is acquainted with all the issues involved may fix the amount of the attorney's fees without the aid of evidence. Sebree v. Rosen, 393 S.W.2d 590, 599[9] (Mo.1965); Agnew v. Johnson, 176 S.W.2d 489, 493[6] (Mo.1943); Vadnais v. Vadnais, 558 S.W.2d 249, 251[3] (Mo.App.1977). The determination of attorney's fees is a matter resting within the sound discretion of the trial court. Wurtz v. Daniel Hamm Drayage Co., 530 S.W.2d 752, 755[4] (Mo.App.1975). We hold that under these circumstances no abuse of discretion has been shown and rule this Point against appellant.
Appellant next contends that the trial court erred in taxing as costs $450.00 for blood tests and $75.00 for an expert from the American Red Cross to interpret the results of these tests and including them in his costs bill.
Respondents requested that appellant submit to a "parent identification blood test." He refused to do so. On January 15, 1982, respondents moved the trial court to require appellant to submit to the test and on January 29, 1982, the trial court, pursuant to Rule 60.01(a), ordered appellant *825 to submit to the blood test and further ordered that the respondents pay for it. On May 12, 1982, Carol requested that the trial court tax as costs $450.00 she previously had paid for the blood tests, and on June 8, 1982, she filed a similar motion to tax as costs $75.00 as a fee for the testimony of an expert witness to interpret the results of these tests. The trial court sustained both of these motions.
Appellant points out that no item is taxable as costs unless specifically allowed by statute. In the Interest of Ray, 602 S.W.2d 955, 958[9] (Mo.App.1980). Where the trial court refused to tax as costs services rendered by an accounting firm in auditing the books and records of the defendant employer to verify the correctness of the amounts of bonuses paid the plaintiff pursuant to his contract of employment in suit on said employment contract, the Court of Appeals affirmed the action of the trial court. McClue v. Epsten, et al., 492 S.W.2d 97 (Mo.App.1973). The court said, l.c. 98[2]:
What is involved here is an attempt by a party to obtain reimbursement in the guise of costs of amounts spent by him in the preparation of his case through the employment of an expert witness. Plaintiff cites no statute of this state authorizing the taxation of this type of expense as costs. Independent research discloses no Missouri statute authorizing the allowance of this expert witness expense as costs, other than the allowance of the usual daily witness fee payable to all ordinary witnesses under § 491.280 V.A.M.S.[3]
Respondents contend that the cost of the blood tests should be taxed as costs as being discovery, the equivalent of a deposition. However they cite no authority to support this proposition and our research has failed to reveal any Missouri authority to support her position.
We hold that neither the $450.00 respondents paid American Red Cross for the blood tests nor the $75.00 they paid the expert to testify are taxable as costs,[4] and said amounts cannot be recovered of appellant. In Interest of Ray, id; McClue v. Epsten, id.
Appellant's final Point is that the trial court failed to advise him regarding obtaining the services of a lawyer to represent him in these proceedings. Appellant wrote a letter to the court, denominated as an "Answer" by the parties. In this letter he said, "... I would like the court to advise me as to what action I can take to defend myself as I have no way to finance the action through a lawyer." He contends that the trial court should have referred him to a reference service or provide him with a lawyer "free of charge."
Appellant admits he has no cases[5] which mandate the duty of a judge in these circumstances. We have found no Missouri cases ruling this issue; other jurisdictions have considered it and have sharply diverged on whether an indigent defendant in a paternity proceeding is entitled to the assistance of counsel at state expense. See Annotation, Right of indigent defendant in paternity suit to have assistance of counsel at state expense. 4 ALR 4th 364.
Where the petitioner in a paternity action is represented by the state or an agency of the state, the cases generally hold an indigent defendant is entitled to appointed counsel. Reynolds v. Kimmons, 569 P.2d *826 799 (Alaska 1977); Salas v. Cortez, 24 Cal.3d 22, 154 Cal.Rptr. 529, 593 P.2d 226, cert. den. 444 U.S. 900, 100 S.Ct. 209, 62 L.Ed.2d 136; People v. Marshall, 82 Mich. App. 92, 266 N.W.2d 678 (1978); Artibee v. Cheboygan Circuit Judge, 397 Mich. 54, 243 N.W.2d 248 (1976); Hepfel v. Bashaw, 279 N.W.2d 342, 4 ALR 4th 352 (Minn. 1979); M. on behalf of T. v. S., 169 N.J.Super. 209, 404 A.2d 653 (1979); Madeline G. v. David R., 95 Misc.2d 273, 275-276, 407 N.Y.S.2d 414, 416 (Family Ct.1978); Department of Social Service v. Witzel, 91 Misc.2d 274, 398 N.Y.S.2d 86 (1977).
Another line of cases have denied indigent defendants in paternity cases assistance of counsel at state expense. County of Los Angeles v. Estes, 96 Cal.App.3d 513, 158 Cal.Rptr. 123 (2d Dist.1979); Littlefield v. Superior Court of Los Angeles County, 98 Cal.App.3d 652, 160 Cal.Rptr. 175 (2nd Dist.1979); State v. Walker, 87 Wash.2d 443, 553 P.2d 1093 (1976).
In Wake County ex rel. Carrington v. Townes, 306 N.C. 333, 293 S.E.2d 95, (1982) the court held that whether an indigent defendant in a paternity suit commenced by the County, through its Department of Social Services Child Support Enforcement Agency, was as a matter of due process entitled to appointed counsel was a question for the trial court on a case by case basis, subject to review on appeal.
In New York, the decisions were in conflict until B. v. D., 99 Misc.2d 1085, 418 N.Y.S.2d 271 (1979) when the court held that pursuant to F.C.A. § 262(a)(VII) an indigent defendant in a paternity proceeding is entitled to appointed counsel.
Missouri has no statute governing the question, and so far as we can discern from the record this was a proceeding instituted by the mother of the child and there is no contention by appellant that the state had any direct interest in the proceeding.
Further, appellant has not demonstrated his indigency nor does the record show any objection to proceeding to trial without counsel. As mentioned hereinbefore, he admitted paying taxes on $17,000.00 income in 1981.
Appellant had adequate time between October, 1981, and June 3, 1982, to follow the appropriate procedures to establish his indigency or retain counsel to represent him. He did neither.
Under these circumstances we hold the trial court did not err in failing to advise appellant regarding how he might obtain the services of a lawyer to represent him in the proceedings. A trial court should not be placed in the position of acting as a referral service to litigants. Appellant could have obtained this information for himself by merely "letting his fingers do the walking" through the yellow pages of the local telephone directory.
Judgment affirmed in all respects except that that part of the judgment awarding respondents $60.00 per week child support is reversed and the cause is remanded to the trial court with directions to conduct an evidentiary hearing into the financial resources of the appellant, including his assets and liabilities, income, needs, and any other factors relevant to his ability to provide support for the child, Nicole. Further, the taxing as costs of the $450.00 for blood tests and the $75.00 for the expert from the American Red Cross is reversed for reasons stated hereinabove.
STEWART and SNYDER, JJ., concur.
NOTES
[1] Statutory references are to RSMo 1978, unless otherwise noted.
[2] 452.340. Child support, how allocatedfactors to be considered.

In a proceeding for ... child support, the court may order either or both parents owing a duty of support to a child ... to pay an amount reasonable or necessary for his support, ... after considering all relevant factors including:
(1) The father's primary responsibility for support of his child;
(2) The financial resources of the child;
(3) The financial resources of the custodial parent;
(4) The standard of living the child would have enjoyed had the marriage not been dissolved;
(5) The physical and emotional condition of the child, and his educational needs; and
(6) The financial resources and needs of the non-custodial parent.
[3] Rule 56.01(b)(4)(b) does provide that the party seeking to discover by deposition the facts known and opinions held to which the expert is expected to testify should, unless manifest injustice would result, be required to pay the expert a reasonable fee for responding to discovery by deposition. That is not the situation we are faced with in this case.
[4] In B.S.H. v. J.J.H., 613 S.W.2d 453, 458[12] (Mo.App.1981) the proper procedure to be followed, assuming that the trial court had the inherent power to make an award for these items, is set out. The amounts should be recorded as a judgment payable by the party against whom the judgment is entered, and cannot be taxed as costs.
[5] Rule 84.04(d) requires that there be a citation of authorities supporting the Point Relied On. Appellant has failed to comply with this requirement. We have, on our own, and without aid of either party to this appeal, found some cases dealing with the question.