451 A.2d 480

**Cleoria CORRA,**

v.

**Raymond COLL, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 2, 1980.

Filed Oct. 1, 1982.

Petition for Allowance of Appeal Denied Jan. 20, 1983.

180

F. Charles Petrillo, Wilkes-Barre, for appellant.

Jonathan Blum, Assistant Public Defender, Wilkes-Barre, for appellee.

Chester B. Muroski, District Attorney, Wilkes-Barre, for participating party.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

CAVANAUGH, Judge:

In this appeal we are asked to decide whether indigent defendants in civil paternity actions have a constitutional due process right to appointed counsel.

On October 5, 1978, appellee, Cleoria Corra, filed a complaint[1] in the Court of Common Pleas of Luzerne County seeking support for Lawrence Paul Corra from appellant, Raymond Coll, Jr., the alleged father of her son. On February 13, 1979, appellant, represented by Legal Services of Northeastern Pennsylvania for the limited purpose of pursuing appellant's request for counsel,[2] filed a motion for the

1. Appellee's complaint was purportedly filed under the Pennsylvania Civil Procedural Support Law, 62 P.S. § 2043.31 *et seq.* However, that Law was repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[1291], effective June 27, 1978, four months prior to the initiation of this support matter. The procedure governing the commencement of support actions in October, 1978 was set forth in 42 Pa.C. S.A. § 6704. Subsections (a) to (d) of that section, insofar as they apply to the practice and procedure in an action for support, have now been superseded. Pa.R.C.P. 1910.31(4), effective July 22, 1981.

2. Legal Services of Northeastern Pennsylvania, underscoring its limited involvement in this appeal, argues that it would be inappropriate

appointment of a Public Defender. In support thereof, appellant filed an affidavit of indigency[3] and also a Statement of Defense indicating that he planned to deny paternity and required legal representation. Trial was delayed pending resolution of appellant's motion and, on August 2, 1979, the Luzerne County Court of Common Pleas en banc denied appellant's request for a Public Defender. In a per curiam order of February 14, 1980, this Court granted appellant's petition for interlocutory review by permission. Hence this appeal.[4] For the following reasons, we reverse.

The Fourteenth Amendment to the United States Constitution provides, in part, that "No state shall . . . deprive any person of life, liberty, or property, without due process of law."[5] Due Process is a concept incapable of exact definition. Rather it is a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant. *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951). In *Boddie v. Connecticut,* 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113, 118 (1971), the Supreme Court held that "due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through

for that federally funded organization to represent indigent defendants in state-initiated paternity actions.

**3.** Appellant's indigency has not been challenged in this appeal.

**4.** Although appellee is represented by the Luzerne County District Attorney's Office in her support action, that office has not participated in any of the proceedings below regarding the propriety of appointing counsel for appellant. In this appeal, appellee's position, to the extent that any exists, is represented by the Luzerne County Public Defender.

**5.** Appellant's brief does not raise a due process claim under the Pennsylvania Constitution but appears to rely only on the Federal Constitution. Therefore, our analysis of the right to counsel issue presented will focus on federal law only.

the judicial process must be given a meaningful opportunity to be heard."

This is a case of first impression in this Commonwealth and we, therefore, are without decisional or statutory guidance in determining whether indigent defendants have a due process right to court-appointed counsel in civil paternity actions. It is clear, however, that a resolution of this question cannot be reached by applying a wooden civil/criminal distinction. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juvenile delinquency proceedings). That approach has long since been abandoned in favor of emphasis on the nature of the threatened deprivation. *See In re Hutchinson*, 279 Pa.Super. 401, 421 A.2d 261 (1980) (allocatur granted) (civil commitment hearings). As Judge Hoffman commented in *Commonwealth ex rel. Finken v. Roop*, 234 Pa.Super. 155, 171–172, 339 A.2d 764, 772–773 (1975), *cert. denied and appeal dismissed*, 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976): "Euphemistic terminology is not determinative of the application of the Due Process Clause... We must consider the reality of the lower court's commitment order. The serious deprivation of liberty and the unfortunate stigma which follow involuntary commitment render the distinction between 'criminal' and 'civil' proceedings meaningless." Recently summarizing the decisional law on the right of indigents to appointed counsel, the Supreme Court in *Lassiter v. Department of Social Services*, 452 U.S. 18, 26–27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640, 649, *rehearing denied*, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981), noted:

> In sum, the Court's precedents speak with one voice about what "fundamental fairness" has meant when the Court has considered the right to appointed counsel; and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured.

In *Lassiter,* the Court considered the inverse of the problem presented by the instant appeal: whether indigent parents in every parental termination proceeding have a due process right to court-appointed counsel. In upholding the decision of the North Carolina Court of Appeals that they do not, the Court weighed the presumption of the right to counsel in situations potentially involving the deprivation of liberty against three due process factors enunciated in the case of *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976):

first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The *Mathews v. Eldridge* balancing test was also employed by the Supreme Court in *Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) wherein it was held that the failure to provide a blood grouping test for indigent defendants in paternity actions violated due process.

Three recent decisions in similar right-to-counsel actions, rendered subsequent to *Lassiter* and *Little,* and using the *Mathews v. Eldridge* test, provide support for the viewpoint that counsel is not constitutionally required. In *Nordgren v. Mitchell,* 524 F.Supp. 242 (D.C.Utah 1981), the U.S. District Court declined to adopt a blanket due process ruling requiring the appointment of counsel for indigent defendants in paternity actions. Instead, it held that the decision should be vested in the state trial court, subject to appeal, on a case-by-case basis. A similar conclusion was reached by the Supreme Court of North Carolina in *Wake County ex rel. Carrington v. Townes,* 53 N.C.App. 649, 281 S.E.2d 765 (1981), *rev'd,* 306 N.C. 333, 293 S.E.2d 95 (1982). Finally, in *State ex rel. Adult and Family Services v. Stoutt,* 57 Or.App. 303, 644 P.2d 1132 (1982), the Oregon Court of Appeals

concluded that federal and state due process were not violated by the lower court's refusal to appoint counsel for an indigent defendant in a state-initiated paternity action. Employing an after-the-fact analysis of the record, the Court found that an attorney could have had little effect on the result reached in that proceeding. The Court specifically declined to decide whether due process ever requires the appointment of counsel in Oregon filiation proceedings. *Id.,* 644 P.2d at 1137 n. 7.

We have carefully reviewed those opinions and are nonetheless convinced that an evaluation of the *Mathews v. Eldridge* factors support the conclusion that denial of counsel for indigent defendants in civil paternity actions in Pennsylvania is inconsistent with due process.

■ Before applying those factors to the case *sub judice,* we first address the argument, raised by the Public Defender, that, since an adjudication of paternity cannot directly result in the deprivation of physical liberty, there can be no presumed right to counsel. As we have noted, the civil/criminal distinction is unavailing in determining whether counsel is constitutionally required. Thus it is of no moment that paternity actions, once governed by criminal statutes, are now civil in nature.[6] *See generally, Williams v. Wolfe,*

---

**6.** The history of paternity actions in Pennsylvania was recently summarized in *Mansfield v. Lopez,* 288 Pa.Super. 567, 573–574 n. 4, 432 A.2d 1016, 1019–1020 n. 4 (1981):

To be sure, paternity actions were once governed by criminal law. *See* Wilful separation or nonsupport, 18 P.S. § 4731, Act of June 24, 1939, P.L. 872, § 731, Act of July 5, 1957, P.L. 481, § 1; and Neglect to support a bastard, 18 Pa.C.S.A. § 4323, Act of December 6, 1972, P.L. No. 1482, No. 334, § 1, eff. June 6, 1973. Under the Act of July 13, 1953, P.L. 431, as amended, Act of August 14, 1963, P.L. 872, 62 P.S. § 2043.31 *et seq.,* a defendant contesting paternity had the choice of having the proceedings governed by civil law (preponderance of the evidence) or criminal law (beyond a reasonable doubt). *See Commonwealth ex rel. Johnson v. Peake,* 272 Pa.Super. 340, 415 A.2d 1228 (1979); *Armstead v. Dandridge,* 257 Pa.Super. 415, 390 A.2d 1305 (1978); *Commonwealth ex rel. Yentzer v. Carpenter,* 240 Pa.Super. 202, 362 A.2d 1101 (1976); *Commonwealth ex rel. Lonesome v. Johnson,* 231 Pa.Super. 335, 338, 331 A.2d 702, 704 (1974); *Commonwealth v. Jacobs,* 220 Pa.Super. 31, 279 A.2d 251 (1971). However,

297 Pa.Super. 270, 443 A.2d 831 (1982). This jurisdiction does not make criminal, and hence punishable by incarceration, the fathering of a bastard child. *Commonwealth v.*

this choice was removed by the Civil Procedural Support Law now in effect, and under which the present action was brought: An action commenced under this act shall be a civil action in accordance with the Rules of Civil Procedure. Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be by the court without a jury unless either party demands trial by jury. The trial, whether or not a trial by jury is demanded, shall be a civil action and there shall be no right to a criminal trial on the issue of paternity. The burden of proof shall be by a preponderance of the evidence. 42 Pa.C.S.A. § 6704(f).

That subsection of 42 Pa.C.S.A. § 6704 was later amended by the Act of October 5, 1980, P.L. 693, No. 142, § 207(a), effective in 60 days, to read as follows:

**Trial of paternity.**—Where the paternity of a child born out of wedlock is disputed, the determination of paternity shall be made by the court without a jury unless either party demands trial by jury. The trial, whether or not a trial by jury is demanded, shall be a civil trial and there shall be no right to a criminal trial on the issue of paternity. The burden of proof shall be by a preponderance of the evidence.

42 Pa.C.S.A. § 6704(g).

The new Rules of Civil Procedure relating to support actions, Pa.R.C.P. 1910.1–1910.31, have superseded those subsections of 42 Pa.C.S.A. § 6704 which apply to the practice and procedure in support actions. See footnote 1, *supra.* However, the Rules do not explicitly suspend 42 Pa.C.S.A. § 6704(g); hence that section relating to paternity trials remains viable and is merely supplemented by the procedure set forth in Pa.R.C.P. 1910.15:

**Rule 1910.15.  Paternity**

(a) If the action seeks support for a child born out of wedlock and the reputed father is named as defendant, the defendant may acknowledge paternity in a verified writing substantially in the form provided by Rule 1910.28(a). In that event the action shall proceed as in other actions for support.

(b) If the reputed father does not execute an acknowledgment of paternity, the domestic relations officer shall terminate the conference. He shall advise the parties that there will be a trial without jury on the issue of paternity unless within ten days after the conference either party demands a trial by jury as provided by Rule 1910.28(b).

*Note:* See Section 6131 of the Judicial Code, 42 Pa.C.S. § 6131 et seq., for the Uniform Act on Blood Tests to Determine Paternity

(c) All post-trial motions after a jury trial or exceptions after a trial by a judge without a jury shall be filed within ten days after verdict or discharge of the jury for inability to agree or within ten days after notice of the filing of the decision of the court and shall be limited to the issue of paternity.

*Strunk,* 256 Pa.Super. 213, 219, 389 A.2d 1089, 1092 (1978) (dissenting opinion by Cercone, J.). An adjudication of paternity may, however, result in the future loss of physical liberty. Once paternity has been established, and a support order entered, a defendant who willfully fails to comply with said order when he has the financial ability to do so shall be guilty of a summary offense punishable by up to ninety days imprisonment. 18 Pa.C.S.A. § 4324. We cannot agree with the Public Defender's position that this threatened deprivation of liberty is too remote to justify the appointment of counsel at the hearing at which paternity is established. *But see Wake County ex rel. Carrington v. Townes, supra; Sheppard v. Mack,* 68 Ohio App.2d 95, 427 N.E.2d 522 (1980).

A contrary result is not mandated by either *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), involving the Sixth Amendment right to counsel in criminal cases where imprisonment is not actually imposed, or *Lassiter, supra.* Proceedings to extinguish parental rights do not commonly raise the spectre of a loss of physical freedom;[7]

> (d)(1) If the verdict or decision is for the defendant on the issue of paternity, unless a post-trial motion or exception is filed and sustained, a final order shall be entered, on praecipe or by the court, dismissing the action as to the child; or
>
> (2) If the verdict or decision is against the defendant on the issue of paternity, unless a post-trial motion or exception is filed and sustained, an interlocutory order shall be entered, on praecipe or by the court, finding paternity.
>
> (e) After an interlocutory order is entered finding that the defendant is the father of the child, the court shall either refer the case to a conference as in other actions for support or as expeditiously as possible hold a hearing on the issue of the amount of support and shall enter a final order of support.
>
> (f) The interlocutory order of paternity is not an appealable order but any issue of paternity raised in a post-trial motion or exception may be included in an appeal from a final order of support.
>
> No inconsistency appears to exist between the Statute and the Rules.

7. The Court in *Lassiter* acknowledged that legal representation may be necessary where petitions to terminate parental rights are based on alleged criminal activity. *Lassiter,* 452 U.S. at 27 n. 3, 101 S.Ct. at 2160 n. 3, 68 L.Ed.2d at 650 n. 3. In concluding that due process does not always require the appointment of counsel, the Court considered that the petition to terminate Mrs. Lassiter's parental

on the other hand, paternity actions, the object of which is to establish liability for support of an illegitmate child, always raise the potentiality of such loss. Due Process is, as we have said, a flexible concept the application of which varies according to the particular situation involved. It is our belief that the creation of a parent-child relationship is an example of the type of situation which demands a flexible application of due process. Accordingly, we analyze the due process requirements of *Mathews v. Eldridge* against a strong presumption that court-appointed counsel is constitutionally required for indigent defendants in a paternity proceeding.

The first factor—the private interests of appellant affected by the paternity action—weighs heavily in favor of the appointment of counsel. Not the least of those interests is the familial. The Supreme Court in *Lassiter* found "plain beyond the need for multiple citation that a parent's desire for and right to 'the companionship, care, custody and management of his or her children' " is an important, protectible, interest. *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2160, 68 L.Ed.2d at 649–650, quoting *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972). The termination of that interest works a deprivation so "unique" that "a parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore,

rights contained no allegations upon which criminal charges could be based.

Although unrelated to the disposition of the instant appeal, we note that the Pennsylvania Supreme Court in *In re Adoption of R.I.,* 455 Pa. 29, 312 A.2d 601 (1973) held that an indigent natural mother whose parental rights were being terminated was entitled to appointed counsel. Although the court based its opinion on the due process clause, and cited federal law, it is unclear whether its final disposition was on state or federal grounds. Moreover, the court did not condition the right to counsel on the existence of pending criminal charges against the parent whose rights were sought to be terminated. Since our state courts, interpreting the state constitution, have the right to increase the substantive and procedural minimums set forth in federal decisional law, *Commonwealth v. Henderson,* 496 Pa. 349, 437 A.2d 387 (1981); *Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979); *Commonwealth v. Bradshaw,* 290 Pa.Super. 162, 434 A.2d 181 (1981), the continued validity of *In re Adoption of R.I.* in light of *Lassiter* is uncertain.

a commanding one." *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2160, 68 L.Ed.2d at 650. The Pennsylvania Supreme Court recognized this when it held, in *Adoption of Walker,* 468 Pa. 165, 360 A.2d 603 (1976), that unwed fathers have a right, coequal to that of unwed mothers, to consent to the adoption of an illegitimate child. *See also Commonwealth ex rel. Peterson v. Hayes,* 252 Pa.Super. 487, 381 A.2d 1311 (1977) (natural parent of illegitimate child entitled to visitation rights).

■ The creation of a parent-child relationship involves equally substantial and protectible familial interests. It is, therefore, unquestionable that "[j]ust as the termination of such [parent-child] bonds demands procedural fairness... so too does their imposition." *Little,* 452 U.S. at 13, 101 S.Ct. at 2209, 68 L.Ed.2d at 637. (citation omitted).

■ The need for procedural safeguards at a paternity hearing is apparent in the light of the significant liberty interests placed in jeopardy at that juncture. Once paternity is established, that finding is *res judicata* and cannot be relitigated in a subsequent proceeding. *Norris v. Beck,* 282 Pa.Super. 420, 425, 422 A.2d 1363, 1365 (1980); *R.J.K. v. B.L.,* 279 Pa.Super. 71, 74–75, 420 A.2d 749, 751 (1980); *Commonwealth ex rel. Palchinski v. Palchinski,* 253 Pa.Super. 171, 175, 384 A.2d 1285, 1287 (1978).[8] As we have stated above, an adjudged father, financially able yet unwilling to comply with a support order, faces a possible deprivation of physical liberty. 18 Pa.C.S.A. § 4324. Consequently, denial of court-appointed counsel at the initial paternity proceeding may result in defendants being sent to jail without ever having had a meaningful opportunity to be heard on the issue of their paternity.

**8.** Pa.R.C.P. 1910.15(f) provides that an order of paternity is interlocutory, and hence nonappealable, and any issue of paternity may not be raised unless properly preserved in a post-trial motion or exception and until a final support order has been entered. Thus, while an adjudged father can seek review of a paternity adjudication, he cannot relitigate that issue subsequent to the paternity hearing.

.

An adjudication of paternity impacts property interests as well. For example, an illegitimate child has rights to an adjudged father's estate, 20 P.S. §§ 2107(c), 2514(8), 3538, 6114(5) and workmen's compensation benefits, 77 P.S. § 562. *See Lehigh Foundations, Inc. v. Workmen's Compensation Appeal Board,* 39 Pa.Commw. 416, 395 A.2d 576 (1978). In addition, the wages, salary or commissions of any person owing a duty of support may be attached in order to meet court-ordered support payments. Pa.R.C.P. 1910.22. *See also,* 48 P.S. § 167(b)(3) (For purposes of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined. . . if there is clear and convincing evidence that the man was the father of the child which may include a prior court determination of paternity).

In short, the familial, liberty and property interests at stake are significantly weighty that they alone may justify the appointment of counsel in paternity actions. We none-theless evaluate the remaining factors set forth in *Mathews v. Eldridge* to determine whether they shift the due process balance away from awarding indigent defendants this im-portant procedural protection.

Our next consideration is the risk that an uncounselled paternity proceeding will lead to an erroneous determination of parentage. In analyzing this second factor of the *Math-ews v. Eldridge* test, the Supreme Court in *Little* considered the "not inconsiderable risk" of an erroneous adjudication of paternity which is faced by an indigent defendant denied free blood grouping tests. Acknowledging the "recognized capacity [of blood grouping tests] to definitively exclude a high percentage of falsely accused putative fathers," the Court found that "access to [those tests] would help insure the correctness of paternity decisions. . ." *Little,* 452 U.S. at 14, 101 S.Ct. at 2209, 68 L.Ed.2d at 637. Pennsylvania conceded the importance of blood evidence in cases of dis-puted paternity by adopting the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S.A. § 6131 *et seq.* The question before us is whether merely granting access to those tests provides an adequate procedural safeguard

against an incorrect determination of paternity. The District Court in *Nordgren v. Mitchell,* 524 F.Supp. at 245, considered this issue and found the statutorily-granted right of indigent defendants in Utah to free blood tests to be sufficient.

We cannot agree that the right to a free blood test is alone sufficient. Rather, as pointed out by the Supreme Court of Minnesota in *Hepfel v. Bashaw,* 279 N.W.2d 342, 347–348 (Minn.1979) (footnote omitted), "the importance of blood tests magnifies the necessity for the timely assistance of counsel, to ensure that the defendant is apprised of his right to request blood tests and to inform him of their significance." We are also persuaded that the right to blood grouping tests granted indigent defendants in *Little,* and provided by statute in 42 Pa.C.S.A. § 6131 *et seq.,* would indeed be emasculated were indigent defendants denied advocacy at a paternity hearing.

■ We, therefore, find that the second part of the *Mathews v. Eldridge* balancing test, coupled with the importance of the private interests affected, literally mandates the appointment of counsel in paternity proceedings.

■ Our resolution of this second factor in favor of indigents is further strengthened by the fact that, here in Pennsylvania, a complainant in a support action at which paternity is disputed shall, "upon the request of the court or a Commonwealth or local public welfare official" be represented by the district attorney. 42 Pa.C.S.A. § 6711(b).[9] A paternity proceeding often becomes an adversary contest

**9.** As discussed in footnotes 1 and 6, *supra,* the new support rules contained in Pa.R.C.P. 1910.1–1910.31 have superseded the procedure under 42 Pa.C.S.A. §§ 6701–6711 relating to support proceedings. However, 42 Pa.C.S.A. § 6711, regarding the district attorney's (a) responsibility to enforce a duty of support, cooperate in the presentation of complaints or in any proceeding designed to obtain compliance with a court order, and (b) representation of a complainant in a support proceeding, was not explicitly repealed by the new rules. It, therefore, remains part of the statutory law of this jurisdiction. In the instant case, Cleoria Corra is represented by the Luzerne County District Attorney's Office in her support action against appellant.

192

between a complainant,[10] backed by the resources of a skilled attorney, and the uncounselled accused father. Under these circumstances, the contest is undeniably tilted in favor of the complainant. Since many indigent defendants may be illiterate and unfamiliar with courtroom procedure, that imbalance is exacerbated yet further. As pointed out by the Supreme Court of California in *Salas v. Cortez,* 24 Cal.3d 22, 31, 154 Cal.Rptr. 529, 535, 593 P.2d 226, 232 (1979), *cert. denied,* 444 U.S. 900, 100 S.Ct. 209, 62 L.Ed.2d 136 (1980) (footnote and citations omitted):

A judgment rendered in this manner is not only unfair, it is unreliable. Recognizing the complexity of these proceedings and the importance of their outcome to the state, the mother and the child, the Legislature has afforded the mother and child the assistance of counsel in prosecuting their claim. However, by intervening heavily on behalf of one side in what has traditionally been a private dispute, the state has skewed the outcome of the case. The chances that the significant consequences of fatherhood will be imposed on an innocent man obviously increase dramatically if, because he is unable to afford counsel, the defendant offers no defense. They increase still further if counsel for the plaintiff is a specialist in prosecuting such claims. . . . Unless the rights of indigent paternity defendants are protected, courts risk finding not the right man, but simply the poorest man to be the father of a child. If paternity is to be determined in an adversary proceeding at the behest of the state, surely the interests of all concerned demand that the defendant be able to defend fully and fairly. He cannot do so when his indigency prevents him from obtaining counsel.

10. Of course, where a complainant in a support action is "a public body or public or private agency having an interest in the care, maintenance, or assistance of a person to whom a duty of support is owing," Pa.R.C.P. 1910.3(3), the state's active involvement and interest in resolving paternity matters is even more acute. Indeed, the State is required, as a condition to the receipt of federal financial aid for local welfare programs, to create a program for locating absent parents, establishing paternity and obtaining child support. 42 U.S. C.A. §§ 652(a)(1), 654(4)(A), 654(6).

The third-and final-factor of the *Mathews v. Eldridge* test is the government interest involved in a paternity action. A primary interest of the state, as the *Lassiter* court noted, is that an accurate and just decision be reached. *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2160, 68 L.Ed.2d at 650. We have already concluded that the presence of counsel at the paternity proceeding helps insure the correctness of a paternity adjudication. Thus, not only the defendant's interest but also the state's interest is best served by a hearing at which a defendant accused of parentage is represented by an attorney. It is furthermore clear that the state's future administrative burdens would be lessened since a correct determination of paternity increases the chance that the adjudged parent will comply with support obligations. Accordingly, while the state will incur the added expense of providing indigents with court-appointed counsel, this expense is outweighed by the salutary aspects of having counsel present at the paternity proceeding.

At last we balance the three due process factors of *Mathews v. Eldridge* —the private interests of the defendant, the risk of an erroneous adjudication of paternity and the government's interest—against the presumption that counsel is required for indigent defendants who face a potential loss of physical liberty as a result of an adjudication of their paternity. In so doing, we are left with the inescapable conclusion that the due process clause of the Fourteenth Amendment to the United States Constitution requires the appointment of counsel for indigent defendants in civil paternity actions in Pennsylvania. Due process is an elastic concept which must be adapted to fit the exigencies of the particular situation at hand.[11] There is no situation of more

11. Moreover, we do not believe that fundamental fairness may be maintained by determining whether an indigent is entitled to appointed counsel on a case-by-case basis, subject to appellate review, as the *Lassiter* Court held with respect to parental termination proceedings. It is often difficult to assess the complexities which might arise in a given paternity trial before that trial is held; thus, a case-by-case approach would necessarily require an after-the-fact evaluation of the record to determine whether appointed counsel could have affected the result reached in a paternity proceeding. The Court of

monumental importance, or more worthy of due process protection, than the creation of a parent-child relationship. In recognition of this, the legislature has conferred legal representation on a complainant upon the request of the court, or a Commonwealth or local public welfare official. We find no reason why an indigent defendant, accused of parentage, should not also be provided with the assistance of experienced counsel.[12]

Other jurisdictions presented with the same issue have likewise granted indigent defendants the right to appointed counsel in paternity suits. *See Reynolds v. Kimmons,* 569 P.2d 799 (Alaska 1977) (state due process); *Salas v. Cortez, supra,* (state and federal due process); *Artibee v. Cheboygan Circuit Judge,* 397 Mich. 54, 243 N.W.2d 248 (1976) (state due process); *Hepfel v. Bashaw, supra* (declined to decide due process and equal protection issue; right to counsel granted pursuant to court's supervisory power); *M. v. S.,* 169 N.J.Super. 209, 404 A.2d 653 (1979); *In re Madeline G. v. David R.,* 95 Misc.2d 273, 407 N.Y.S.2d 414 (Family Ct. 1979) (state and federal due process); *Cheryl B. v. Alfred W.D.,* 99 Misc.2d 2085, 418 N.Y.S.2d 271 (Fam.Ct.1979) (statutory right); *State ex rel. Graves v. Daugherty,* 266 S.E.2d 142 (W.Va.

Appeals in Oregon, although adopting this hindsight approach, acknowledged its obvious flaw: "There is some logic to defendant's suggestion that it is circular to look to the record to determine whether counsel could have affected the result, when one of the principle missions of counsel in any ligigation is to develop the record." *State ex rel. Adult Services Division v. Stoutt,* 644 P.2d at 1137. We agree and, for this reason, find that fundamental fairness is best ensured by providing indigent defendants with appointed counsel before the commencement of a paternity proceeding. Cf. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (due process requires "clear and convincing evidence" standard of proof in parental rights termination proceeding; distinguishing *Lassiter,* the Court declined to adopt a case-by-case determination of the proper standard of proof in a given proceeding, finding that retrospective review cannot preserve fundamental fairness).

12. We are cognizant of, but specifically decline to address, the lurking equal protection problem presented where one party may be provided with counsel by the State yet the opposing party denied the same benefit.

1980) (state due process).[13]  In some of these cases, the right to counsel has been conditioned upon the State playing an active role on behalf of the complainant, *see, e.g., Reynolds v. Kimmons, supra,* and *Salas v. Cortez, supra,* but other cases have not expressly made state involvement a prerequisite to granting the right of counsel.  *See, e.g. Artibee v. Cheboygan Circuit Judge, supra.*  The right to counsel has also been embraced by the National Conference of Commissioners in the Uniform Parentage Act § 19(a) (1973) and in several state statutes.  See Hartung, *The Right to Appointed Counsel in Paternity Actions,* 19 Journal of Family Law 497, 502–503 n. 28 (1980–1981).  *See generally,* 4 A.L.R. 4th 363–372.

For the foregoing reasons, we reverse the Order of the lower court and remand for a paternity hearing at which appellant is represented by appointed counsel.  We do not retain jurisdiction.[14]

13.  *But see Sheppard v. Mack, supra,* (no deprivation of liberty in civil paternity action): *State v. Walker,* 87 Wash.2d 443, 553 P.2d 1093 (1976) (Sixth Amendment analysis).

14.  Although we find that appellant is entitled to counsel, and remand this case for that purpose, we will not reach the question as to whether the appointed counsel need be from the Public Defender's Office.  The Common Pleas Court, having denied appellant the right to counsel altogether, did not consider this question.  We believe, however, that that determination should first be made by the lower court.  Moreover, that Court is more privy than we to local considerations, i.e. budgetary constraints, which may impact the choice of an attorney for appellant.