## Carnes v. Carnes

*Judith E. Wilson,* for defendant.
*Richard T. Ruth,* for American Civil Liberties Union.
*Thomas S. Kubinski,* for the County of Erie.
*Michael M. Palmisano,* for Erie County Public Defender's Office.

DOMITROVICH, *J.,* October 23, 1990 — This matter is before the court on the statement of matters complained of filed by appellant, the County of Erie, Pennsylvania, on September 14, 1990.

On March 23, 1990, plaintiff filed a petition for civil contempt for violation of a support order entered on June 19, 1986. On April 16, 1990, defendant filed a petition for appointment of counsel, in which he alleged that he was indigent, on public assistance, and without income or assets sufficient to pay an attorney. Defendant further alleged that he had been denied representation by the Public Defender's Office and Northwestern Legal Services.' Defendant argued that he was entitled to court-appointed counsel because of his indigence and because he was at risk for the loss of his personal liberty in the contempt proceeding.

Counsel for defendant and for the County of Erie filed briefs on the right-to-counsel issue and, on June 8, 1990, along with the public defender and the American Civil Liberties Union, presented oral argument to this court.

On August 8, 1990, upon review of the arguments presented in light of the balancing test established to analyze due process protections by

the United States Supreme Court in *Mathews v. Eldridge,* 420 U.S. 319 (1976), this court found that defendant was entitled to be represented by counsel; and counsel was appointed for him by this court.

Appellant filed a notice of appeal on September 5, 1990. On September 6, 1990, this court issued an order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), requesting appellant to file a concise statement of the matters complained of on appeal. Appellant contends that the weight of the *Mathews* factors would not require that free counsel be appointed to represent indigent defendants in contempt proceedings in non-support actions.

In *Mathews v. Eldridge,* the United States Supreme Court enunciated a three-part balancing test for the analysis of the constitutional sufficiency of the due process protections accorded in a particular situation. 424 U.S. at 334. The factors which should be considered are (1) the private interest to be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used and the probable value of additional procedural safeguards; and (3) the governmental interest involved, including the fiscal and administrative burdens the additional procedural requirements would entail. *Id.* at 335. Where the additional procedural safeguard under scrutiny is the entitlement to court-appointed counsel, the court has found, based upon examination of its own precedent, that there exists a presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of physical liberty. *Lassiter v. Department of Social Services,* 452 U.S. 18, 26-7, reh'g. denied, 453 U.S. 927 (1981). It is against this presumption that the net

weight derived from the balancing of the three *Mathews* criteria must be measured. 452 U.S. at 27.

Moreover, the right of the indigent defendant to be afforded court-appointed counsel where his or her personal liberty is at stake is unaffected by the styling of the proceeding as civil rather than criminal. *Id.* at 25-6. The right to counsel turns not on whether the proceeding may be characterized as civil or criminal but whether the litigant may be deprived of personal liberty as a result of the proceeding. *Ridgway v. Baker,* 720 F.2d 1409, 1413 (5th Cir. 1983); *Sevier v. Turner,* 742 F.2d 262, 267 (6th Cir. 1984); *Walker v. McLain,* 768 F.2d 1181, 1183 (10th Cir. 1985), cert. denied, 474 U.S. 1061 (1986). The Superior Court of this Commonwealth has stated, in determining whether a due process right to be afforded court-appointed counsel exists, that the potential deprivation of liberty renders the distinction between criminal and civil proceedings meaningless. *Corra v. Coll,* 305 Pa. Super. 179, 451 A.2d 480 (1982). Any technical distinction between civil and criminal violations is overshadowed by the reality of the threat of incarceration, which demands that the protection of legal advice and advocacy be given those persons facing that threat. *Tetro v. Tetro,* 86 Wash. 2d 252, 544 P.2d 17 (1975).

In *Corra v. Coll,* the Superior Court of this Commonwealth has found, pursuant to *Mathews* and *Lassiter,* that it is inconsistent with due process to deny counsel to indigent defendants in civil paternity actions. The higher court first determined that there was a strong presumption that court-appointed counsel for the indigent defendant was constitutionally required. The court reasoned that there was a future risk of loss of liberty should defendant fail to comply with the order of support

that would be entered as a consequence of an adjudication of paternity. The court was not dissuaded from this conclusion by the argument that the future risk of loss of liberty was too remote from the paternity action to justify appointment of counsel. *Id.*

Proceeding to an analysis of the *Mathews* factors, the court, in *Corra,* determined that the private interests — the creation of a parent-child relationship, the res judicata effect of a finding of paternity, and the property interests involved — were sufficiently weighty alone to justify appointment of counsel. Second, the combination of these private interests with the not-inconsiderable risk that the absence of counsel might lead to an erroneous determination of paternity, the court found, literally mandated appointment of counsel. Third, the court found that the state's interest would also be best served by appointment of counsel because future administrative burdens would be lessened by a correct determination of paternity and the beneficial aspects of having counsel present outweighed the added expense the state would incur. Finally, when the court measured the net weight of its *Mathews* analysis against the presumption, it found that the conclusion that due process required the appointment of counsel for indigent defendants in paternity cases was inescapable. *Id.*

This court finds that conclusion equally inescapable in non-support contempt proceedings. The defendant in non-support contempt matters is clearly at risk for the loss of his personal liberty since he may be incarcerated if found in contempt. In fact, the contempt proceeding in these cases is precisely that point in time when the future risk of loss of liberty relied upon in *Corra* becomes a present potential for loss of liberty. Thus, the pre-

sumption that the defendant must be afforded the right to counsel in the contempt proceeding is no less weighty than the presumption found to exist in the context of a paternity action.

The balancing of the *Mathews* criteria also weighs in favor of the defendant. First, the private interest at stake in the contempt proceedings — the defendant's personal liberty — is substantial.

Second, the risk of erroneous deprivation of that interest, absent the presence of counsel, increases as the defendant's ability to articulate the reasons for his failure to comply with the support order decreases. While this court does not mean to imply that indigent defendants are incapable of representing themselves, it is apparent that the assistance of counsel familiar with the law would greatly reduce the defendant's risk. Counsel would inform the defendant ahead of time to prepare for a purge if found in contempt, and advise him of his responsibilities to his child/children and his obligation to comply with court orders, and the danger in not complying with a court order where defendant is capable of working and paying the support ordered. This court specifically rejects the county's argument that the right to counsel should somehow be qualified because the defendant who is incarcerated in a contempt matter has the keys to the prison and may be released upon payment of the purge amount. The keys are only available to that defendant who can pay the delinquent support amount set as a purge. *Ridgway,* 720 F.2d at 1414; *Walker,* 768 F.2d at 1183. The indigent defendant's case must be properly presented to the court by an attorney appointed to represent the defendant so that the court may make its determination of a purge amount with which the defendant has the present ability to comply. *Barrett v. Barrett,* 470 Pa.

253, 368 A.2d 616 (1977). Otherwise, defendant must remain in confinement for the definite period ordered by the court if the purge figure is not paid by defendant. Error is less likely to occur if counsel is present to aid the defendant in establishing his financial picture and in ensuring that he or she is not incarcerated improperly.

Fundamental fairness requires that an indigent defendant faced with a loss of personal liberty needs an attorney to advise him as to the meaning and requirements of applicable laws, particularly where the state's representative is well versed in the laws relating to support and contempt powers of the court. *Mead v. Batchlor,* Michigan Supreme Court, no. 81950, slip op., August 28, 1990. Even a modest reduction in the risk of erroneous deprivation of defendant's liberty interest justifies appointment of counsel. *Young v. Whitworth,* 522 F.Supp. 759, 763 (S.D. Ohio 1981).

Third, this court does not recognize that the mere affording of the appointment of counsel for indigent defendants in non-support contempt matters will create a heavy, unquantified, administrative or fiscal burden on the county. The notice of contempt in Erie County informs the defendant that, if he desires counsel, he must meet financial eligibility requirements in order to receive counsel. Defendant must go to the Public Defender's Office and make application for counsel. From this court's experience, the number of defendants seeking counsel is very minimal. However, even if it were a fiscal burden, this court also recognizes a countervailing governmental interest in the efficiency of its court system, which interest would be benefited by the assistance of counsel familiar with the procedural aspects of the contempt proceeding and the need for respecting the court's orders in the community.

It is axiomatic that, once it has been determined that the indigent defendant has a right to court-appointed counsel, he or she must be informed of that right and that, once informed, may knowingly and intelligently waive that right. *Walker,* 768 F.2d at 1185; *Hickland v. Hickland,* 56 A.D.2d 978, 393 N.Y.S.2d 192, 195 (1977); *Ferris v. Maass,* 75 Wis.2d 542, 249 N.W.2d 789, 791 (1977); *Tetro,* 544 P.2d at 20.

Therefore, the notice which the court provides to defendants in support contempt proceedings states, in pertinent part, as follows:

"(5) You have a right to an attorney at this hearing. However, the judge will proceed with your case whether or not you have an attorney. If you do not have an attorney, go to or telephone the office set forth below to find out where you can get legal help:

Lawyers Referral Service

501 Sassafras Street
Erie, Pennsylvania 16507
(814) 459-3111

"If you cannot afford an attorney and meet certain financial eligibility requirements, an attorney will be appointed for you. You should go to or telephone the office set forth below to schedule a financial eligibility interview:

Public Defender's Office

509 Sassafras Street
Erie, Pennsylvania 16507
(814) 451-6322"

Thus, it is clear that, once notified of his right to counsel, the defendant must act affirmatively to exercise that right by seeking his own attorney or attempting to establish indigence to qualify for

appointed counsel. Failure of the defendant to act to exercise the right to counsel constitutes a waiver of that right. Once the defendant makes application, the application for counsel must be approved based on a review of the defendant's financial background by the county's investigator in the Public Defender's Program, who does similar investigations for criminal defendants.

Thus, it is clear that the balancing of the *Mathews* criteria requires this court to find in favor of the defendant. When the net weight of the result of this analysis is combined with the presumption in favor of the right to counsel, this court is compelled to conclude that the indigent defendant in support contempt proceedings is entitled to court-appointed counsel. Such a decision is supported by *Commonwealth ex rel. Brown v. Hendrich*, 220 Pa. Super. 225, 283 A.2d 722 (1971). In that proceeding the appellant, who had been incarcerated for failure to comply with a support order, contended that although he may not have been entitled to counsel at the support hearing, due process entitled him to counsel when his liberty was at stake in the contempt proceeding. The Superior Court, citing *Cooke v. United States*, 267 U.S. 517, 537 (1925), noted that the Supreme Court had held that due process in the prosecution of contempt required that the accused be afforded a reasonable opportunity to defend against the charges, which would include, if requested, the assistance of counsel. The development in the law since that 1925 decision, the Superior Court stated, would eliminate the "if requested" condition where the rights of indigents were involved. *Hendrich, supra.*

Therefore, for the reasons stated above, this court finds that an indigent defendant is entitled to court-

appointed counsel in non-support contempt proceedings in which the defendant's personal liberty is at stake.