J-S04002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| K.J.W., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| L.W., | |
| Appellee | No. 1429 MDA 2014 |

Appeal from the Order Entered July 28, 2014
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2013-20723

BEFORE:  BOWES, ALLEN, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 08, 2015**

K.J.W. ("Mother") appeals from the July 28, 2014 custody order awarding L.W. ("Father") primary physical custody of their nearly eleven-year-old son, J.W., and granting Mother overnight custody during three weekends per month.  Mother asserts that the trial court erred in denying her motion to continue the custody hearing and by requiring her to participate in the custody trial without counsel.  We affirm.

Mother and Father married on December 9, 2002, and J.W. was born of the marriage during August 2003.  The parties' relationship eventually dissolved, and on October 3, 2013, Father filed for divorce.  As Father's divorce complaint did not include a count for custody of his son, on

_____

[*]  Retired Senior Judge assigned to the Superior Court.

November 12, 2013, Mother filed a custody complaint seeking shared legal custody of J.W. and primary physical custody.

Since the itinerate nature of Mother's legal representation during the course of this litigation is pertinent to our disposition, a comprehensive review of the procedural history is warranted. Mother's first attorney Wiley Parker, Esquire, who represented Mother in a support matter, accepted service of Father's divorce compliant. However, Bret Wiest, Esquire, subsequently entered his appearance and filed Mother's November 2013 custody complaint. Attorney Wiest represented Mother *pro bono* through a referral from MidPenn Legal Services' program. Two months later, Attorney Wiest filed a motion to withdraw from representation citing Mother's desire to fire him and proceed unrepresented. **See** Motion to Withdraw Entry of Appearance, 1/14/14 at 1. The trial court granted the motion the following day.

Next, the trial court granted Father's petition for a writ of *ne exeat*[1] prohibiting Mother from removing J.W. from Lebanon County, Pennsylvania pending the custody litigation. Father was concerned that, in the absence of a custody order and in light of Mother's statement that J.W. would only be in the county for approximately one more month, Mother would attempt to remove the child from the court's jurisdiction. The court scheduled a

_____

[1] *Ne exeat* is a writ ordering a person to whom it is addressed not to leave the court's jurisdiction. **See** Black's Law Dictionary 1054 (7th ed. 1999).

conciliation conference for January 27, 2014, where Mother appeared *pro se*. Following the conciliation conference, the court entered an interim custody order awarding Mother primary custody and granting Father five-hour periods of physical custody on Monday and Tuesday evenings. The order provided that once Father secured suitable housing, he could exercise weekly overnight custody between Monday afternoon and Wednesday morning.

Mother retained her next attorney, Colleen Gallo, Esquire, on April 1, 2014, who entered her appearance for the pretrial conference. Following that meeting, the trial court declined to schedule a custody trial because the parties appeared to be working toward an amicable resolution of the custody dispute. The interim order continued to govern the custody arrangement. Three weeks later, Mother filed a motion to withdraw her custody complaint. The motion indicated that Mother desired to maintain the *status quo* outlined in the interim custody order granting her primary physical custody.

Father countered that the interim order was insufficient to address all of the facets of the custody dispute, and he argued that Mother failed to comply with that interim order. Father complained, *inter alia*, that Mother interfered with his weekday custody on at least eight occasions between February 11, and April 1, 2014, and that J.W. was absent from school on six of those dates. Additionally, Father filed a motion to schedule the custody

trial. On May 13, 2014, the trial court granted Father's motion and scheduled the custody trial for July 28, 2014.

On May 30, 2014, Attorney Gallo filed a petition to withdraw from representation. That petition averred that Mother "has requested that Petitioner withdraw her appearance in the custody matter." *See* Petition for leave to withdraw appearance in custody, 5/30/14 at (unpaginated) 2. The request was granted on June 2, 2014.[2] The following day, Father filed a petition for contempt against Mother for failing to comply with the interim custody order. Specifically, Father alleged that Mother interfered with his ability to exercise physical custody and would not permit him to contact the mental health professionals treating their son. The scheduling order included a notation that the trial court mailed notice of the contempt hearing directly to Mother "Plaintiff (Pro Se)." Notice and Order to Appear, 6/6/14, at 2. After a hearing, on June 24, 2014, the trial court found Mother in

---

[2] On July 1, 2014, Attorney Gallo reentered her appearance under the consolidated docket number governing both the custody case and the the divorce action, filed a counterclaim in divorce, and requested the appointment of a divorce master to address economic aspects of the divorce unrelated to custody. Since Attorney Gallo remained listed as the attorney of record when the custody trial occurred, she technically represented Mother at that juncture. However, it is clear from the record that Attorney Gallo's appearance was for a limited purpose unrelated to the child custody litigation. Moreover, neither Mother nor the trial court treated Attorney Gallo's representation in the divorce matter as extending to the custody litigation.

contempt. That order was mailed directly to Mother, again, with the *pro se* designation.

On July 22, 2014, nearly ten weeks after the trial court scheduled the custody hearing, and approximately six-and-one-half-weeks after Attorney Gallo withdrew her appearance in the custody case, Mother filed a *pro se* motion for a continuance. Mother alleged that she was unrepresented, could not afford to hire private counsel, and although she sought representation through MidPenn Legal Services, the agency was unable to represent her or refer her to *pro bono* counsel before the scheduled hearing. The trial court denied the motion summarily the following day, and after revisiting Mother's request at the outset of the scheduled custody hearing, the court proffered its explanation on the record in open court. Thereafter, the trial court heard both parties' evidence and entered the above referenced custody order awarding Father primary physical custody of J.W. and granting Mother partial physical custody on three weekends per month, alternating major holidays, and one full week of summer vacation. This counseled, timely appeal followed.[3] Mother complied with Pa.R.A.P. 1925(a)(2)(i) by filing her concise statement of errors complained of on appeal concomitant with her notice of appeal. She raises two issues for our review:

_____

[3] Attorney Parker, the lawyer who accepted service of Father's divorce complaint on Mother's behalf, represents Mother on appeal.

[1] Did the Lower Court err in denying Appellant['s] . . . Motion for Continuance filed on or about July 22, 2014 to permit her to obtain counsel?

[2.] Did the Lower Court err requiring Appellant . . . to participate in the Custody Trial without counsel?

Mother's brief at 6.[4]

This Court reviews a trial court's decision to grant or deny a continuance for an abuse of discretion. *Baysmore v. Brownstein*, 771 A.2d 54, 57 (Pa.Super. 2001). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." *Id*. There is no specific rule governing continuances in Pa.R.C.P. 1915.1-1915.25, the sections of our procedural rules that relate specific to custody and visitation. Accordingly, we review Mother's claim in light of the general rule delineated in Pa.R.C.P. 216.

The applicable rule sets provides as follows:

**Rule 216. Grounds for Continuance**

(A) The following are grounds for a continuance:

(1) Agreement of all parties or their attorneys, if approved by the Court;

---

[4] Mother does not challenge the merits of the trial court's consideration of J.W.'s best interests pursuant to 23 Pa.C.S. 5328(a) or the court's iteration of its considerations on the record at the close of the hearing. *See* N.T. 7/28/14, at 224-237.

(2) Illness of counsel of record, a material witness, or a party. If requested a certificate of a physician shall be furnished, stating that such illness will probably be of sufficient duration to prevent the ill person from participating in the trial;

(3) Inability to subpoena or to take testimony by deposition, commission, or letters rogatory, of any material witness, shown by affidavit which shall state:

(a) The facts to which the witness would testify if present or if deposed;

(b) The grounds for believing that the absent witness would so testify;

(c) The efforts made to procure the attendance or deposition of such absent witness; and

(d) The reasons for believing that the witness will attend the trial at a subsequent date, or that the deposition of the witness can and will be obtained;

(4) Such special ground as may be allowed in the discretion of the court;

(5) The scheduling of counsel to appear at any proceeding under the Pennsylvania Rules of Disciplinary Enforcement, whether:

(a) as counsel for a respondent-attorney before a hearing committee, special master, the Disciplinary Board or the Supreme Court;

(b) as a special master or member of a hearing committee; or

(c) as a member of the Disciplinary Board;

(6) The scheduling of counsel to appear at any proceeding involving the discipline of a justice, judge or magisterial district judge under Section 18 of Article V of the Constitution of Pennsylvania, whether:

(a) as counsel for a justice, judge, or magisterial district judge before the special tribunal provided for in 42 Pa.C.S. § 727, the Court of Judicial Discipline, the Judicial Conduct Board or any hearing committee or other arm of the Judicial Conduct Board; or

(b) as a member of the Court of Judicial Discipline, the Judicial Conduct Board or any hearing committee or other arm of the Judicial Conduct Board.

Pa.R.C.P. 216.

Herein, there was no agreement between the parties, illness, discovery issue, or applicable scheduling conflicts. Thus, the only potential ground for Mother's request for a continuance in this case was under Rule 216(A)(4) "Such special ground as may be allowed in the discretion of the court[.]" Instantly, our review of the record does not reveal that the court abused its discretion in denying Mother's motion.

At the beginning of the custody hearing, the trial court engaged Mother in a lengthy discussion about her request for the continuance. First, the trial court listed the attorneys who had represented Mother since she filed the underlying custody complaint, culminating with Attorney Gallo's withdrawal on June 2, 2014. *See* N.T., 7/28/14, 6-7. Mother confirmed that she was unable to afford Attorney Gallo's representation in the custody case. *Id*. at 7, 8. Next, the court highlighted that Mother had approximately six-and-one-half weeks from the date of Attorney Gallo's withdrawal to find another lawyer to represent her at the custody hearing but failed to do anything other than contact MidPenn Legal Services to help her secure a continuance. However, that effort was ineffectual. Indeed,

when the agency contacted Father's attorney to request the scheduling accommodation, it was still unaware that Mother had fired Attorney Wiest, the *pro bono* attorney who it originally referred to Mother to assist her in initiating this custody litigation. *Id*. at 8.

Thereafter, the trial court considered Father's bases for opposing Mother's motion. The crux of Father's position was that time was of the essence in this highly contentious custody litigation. Father cited Mother's interference with his ability to exercise custodial rights, her lack of communication, and her unilateral decision making regarding J.W.'s mental health. *Id*. at 9-10. For instance, Mother previously refused to allow Father to access J.W.'s health records or contact his doctors, and after the contempt order directed her to release that information, Mother simply changed physicians without informing Father. *Id*. at 10-11. Additionally, Father was concerned that Mother would abduct J.W. despite the order requiring the child to stay within the county. *Id*. at 10. Also, noting that J.W.'s summer break was ending and that Mother had caused J.W. to miss several days of school during the prior academic year, Father desired to resolve the custody dispute and have his son settle into a routine before school started. *Id*. at 10, 11.

Thereafter, the trial court issued the following findings:

One, mother has had two previous counsel, both of whom have withdrawn their appearance.

Two, mother had previously continued a contempt proceeding under the basis of needing legal counsel.[5] And even though the Court granted that matter, she still appeared without counsel.

Three, the continuance asked in this matter . . . was filed almost seven weeks after the date set for the custody [hearing.]

Four, based on all of the circumstances in this case and the necessity to promptly address custody matters, the Court is compelled to deny the custody request.

N.T., 7/28/14, at 11-12. Prior to issuing the underlying custody order, the trial court revisited this issue a third time, reiterated the foregoing rationale and concluded, "The matter has gone too long. I felt the interest of the child trumped all of [Mother's reasons] and denied [the request for a continuance]. *Id*. at 224. There is no basis to disturb the trial court's determination.

_____

[5] The certified record does not support the court's finding that it previously granted Mother a continuance so that she could obtain representation prior to the hearing on Father's petition for contempt. The record confirms that Father filed his motion for contempt on June 3, 2014, and on June 6, the trial court entered an order scheduling a hearing for June 24, 2014. The certified record does include Mother's putative request to continue that proceeding, and neither the request nor an order granting a continuance is noted on the list of docket entries. Moreover, the hearing occurred on the date originally scheduled. Consequently, the record will not sustain this aspect of the trial court's findings. Hence, we do not consider this finding in affirming the trial court's decision to deny Mother's request to continue the custody hearing.

Initially, we observe that Mother's attempt to bolster her position by referencing *Corra v. Coll*, 451 A.2d 480 (Pa.Super. 1982), is unpersuasive. In *Corra*, this Court confronted whether an indigent defendant in a civil paternity action filed pursuant to the now-repealed Pennsylvania Civil Procedure Support Law had a right to representation under the Fourteenth Amendment to the United States Constitution. In relevant part, after engaging in the required constitutional analysis, we found that regardless of whether the paternity action was state-initiated or simply prosecuted by an indigent Mother with a state-provided attorney, due process required the reciprocal appointment of counsel for an indigent defendant. *Id*. at 192-193. We reasoned, "the legislature has conferred legal representation on a complainant upon the request of the court, or a Commonwealth or local public welfare official. We find no reason why an indigent defendant, accused of parentage, should not also be provided with assistance of experienced counsel." *Id*. at 194.

Mother's reliance upon our holding in *Corra* is inapt within the domain of child custody litigation because the relevant aspects of the two actions simply do not equate. While a civil paternity case under the Pennsylvania Civil Procedure Support Law implicated at least some level of state action, there is **no** state action in a custody matter. As we discuss, *infra*, child custody litigation is purely private and the parties to the custody dispute are responsible for their own counsel. Thus, in contrast to the civil paternity case this Court addressed in *Corra*, where the statute provided for state-

- 11 -

appointed counsel to represent indigent mothers, the legislature has never conferred legal representation to either parent in custody disputes. Accordingly, the **Corra** Court's rationale is not instructive to the case at bar.

Additionally, the certified record validates that the trial court's decision was not manifestly unreasonable or the results of partiality, prejudice, bias or ill-will. Prior to denying Mother's motion for a continuance, the trial court considered all of the pertinent factors in this case, including the case history, Mother's intermittent legal representation, the amount of time Mother had to locate yet another substitute counsel before the scheduled hearing, the effect of further delay upon Father, and most importantly, J.W.'s best interest.

Stated simply, while Mother lacked representation on the date of the hearing, she had been represented by several attorneys throughout this litigation, whom she either deemed ill fitting or too expensive. Mother had more than six weeks from the date that Attorney Gallo withdrew her representation to either retain private counsel or locate substitute *pro bono* counsel. She did neither. Instead, Mother continued unrepresented, flouted the interim court order, and abused the authority that she wielded concomitant to that interim award of primary physical custody. Mother failed to cooperate with Father regarding basic issues, threatened to abscond with J.W., and elected to keep J.W. home from school rather than permit Father to exercise his court-ordered custodial periods. These actions sustain Father's perspective that maintaining the *status quo* while Mother searched

for another lawyer would not only continue to prejudice him, but would also penalize J.W. As the trial court cogently opined, "The child should not be penalized because Mother has a history of becoming dissatisfied with her attorneys and firing them. The child's interest trumped all and required proceeding with the custody trial." Trial Court Opinion at 7. For all of the foregoing reasons, Mother's claim fails.

Next, we address Mother's complaint that the trial court erred in requiring her to proceed without the assistance of counsel. Mother does not assert that she was entitled to counsel. Indeed, it well ensconced that there is no absolute right to counsel in civil cases, including child custody cases. *See Karch v. Karch*, 879 A.2d 1272 (Pa.Super. 2005) ("There is no right to counsel in divorce, custody, or support proceedings."); *Rich v. Acrivos*, 815 A.2d 1106, 1108 (Pa.Super. 2003) (affirming trial court's decision to deny husband court-appointed attorney in divorce proceedings); *Wilt v. LaLonde*, 762 A.2d 1109 (Pa. Super. 2000) (Sixth Amendment right to counsel did not extend to a custody and visitation cases). Rather than assert a non-existent right to counsel, Mother delineates a litany of trial court errors and argues that, but for the court's demand that she litigate her custody complaint *pro se*, the errors could have been highlighted and corrected. Again, no relief is due.

First, the trial court did not require Mother to litigate her case *pro se*. As we previously discussed, Mother had sufficient time to obtain legal representation in this case. However, since Mother failed to secure counsel

- 13 -

prior to the custody hearing or a continuance to maintain the *status quo*, the trial court properly demanded that the custody hearing proceed regardless of the status of Mother's legal representation. Our jurisprudence is unambiguous in that a *pro se* litigant takes upon the risks associate with the absence of any legal training. **See Rich**, **supra** at 1108 (quoting **Vann v. Unemployment Compensation Board of Review**, 494 A.2d 1081, 1086 (Pa. 1985)) ("any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing."). Indeed, while Mother concedes this principle, she asserts that the trial court overstepped its bounds and made Mother's presentation of her case more difficult. The record belies Mother's assertion. Contrary to Mother's protestations, the trial court made deliberate efforts to help Mother keep her argument on course during the custody hearing, including providing her a copy of the § 5328(a) best interest factors that would be dispositive of the child custody case. Accordingly, no relief is due.

For all of the forgoing reasons, we affirm the order awarding Father primary physical custody of his eleven-year-old son.

Order affirmed.

Judge Allen joins this disposition.

Judge Strassburger concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/8/2015